COMMONWEALTH *vs.* CHARLES G. SHAW.
SAME *vs.* ARTHUR R. KANE.
SAME *vs.* ROBERT SHEEHEY.

Hampshire.    September 14, 1874.    WELLS & MORTON, JJ., absent.

On a complaint on the St. of 1869, *c.* 415, § 36, for keeping intoxicating liquors with intent to sell the same in violation of law, evidence that the defendant was at a bar room on the day mentioned in the complaint ; that he had been there for more than a year previously ; that in the bar room were found small tumblers on a drainer which smelt of liquor ; that intoxicating liquors were found in a cellar communicating with the bar room ; that there was a sign over the bar room on which was the surname of the defendant with that of another person ; and that the defendant said to the witness when the liquors were found that if he, the witness, was as good to search other places as he was that, he would find more liquors, is sufficient to be submitted to the jury, although the liquors found were returned on a search-warrant as the property of the other person whose name was on the sign, and were forfeited, no one claiming them.

On a complaint on the St. of 1869, *c.* 415, § 36, for keeping intoxicating liquors with intent to sell the same in violation of law, evidence that the defendant had on the day named in the complaint a tunnel and measure in his hand; that there were several measures over the sink in the kitchen; that there were intoxicating liquors found buried in the ground in the cellar, which had not been used for some time; that near the day of the complaint drunken persons, strangers, had been found on the defendant's premises; that access to the cellar where the liquors were found was from the outside, and that there was a path to it leading from the defendant's back door, and footmarks in the cellar from the outside door; and that although there was a door leading into this cellar from another to which tenants had access, this door was not used, the floor was covered with dust and showed no footmarks, is sufficient to be submitted to the jury.

On a complaint on the St. of 1869, *c.* 415, § 36, for keeping intoxicating liquors with intent to sell the same in violation of law, evidence that, on the approach of state constables, the doors of the defendant's house were locked; that a crash was heard at the back of the house, and on going there a stone jar was found broken, with some whiskey in it, a broken tumbler, and liquor spilled upon the ground; that in the kitchen were found a sugar bowl with a spoon in it, and a tumbler which had recently been used for liquor; that there was a bar room where were kept candies, cigars, tobacco, soda, small beer, and small whiskey tumblers, is sufficient to be submitted to the jury.

THREE COMPLAINTS on the St. of 1869, *c.* 415, § 36, for keeping intoxicating liquors with intent to sell the same in violation of law.

THE FIRST COMPLAINT charged the offence to have been committed on July 3, 1873, at Northampton.

At the trial in the Superior Court, on appeal, before *Dewey,* J., Elijah N. Sampson, a state constable, testified as follows: " On July 3, 1873, I took a search-warrant to search the premises of Michael Connor, opposite the Fitch Hotel; passed in through the front door into the bar room, and found the defendant and another man. On looking the bar over, found four small tumblers on a drainer, which smelt of liquor, and some sugar there in a drawer and a spoon in it, and all the implements for carrying on the trade." The witness being directed to state what he found, said he found a pail for rinsing; " searched the cellar, and found on the cellar wall on the back stairs six bottles, four contained whiskey and two of them gin; that was all the liquor found. A door opened from the bar room into the cellar. There was a regular bar there, and beer tumblers; no other business in that room, unless a few cigars on the shelf. There are two front rooms; front room used for sale of tobacco, cigars, nuts; never knew of any oysters sold there. Two rooms in front,

two doors, doors out of both rooms into the bar room. Joseph Kneeland was there with the defendant when I first went in. Have known the defendant at that place ever since I was appointed on the force, which was a year ago last June ; Kneeland does not belong there. The defendant made this remark, that if I was as good to search other places as I was here I should find more liquor." On cross-examination, the witness testified that he returned these six bottles found on July 3, on the search-warrant, as the liquors of Michael Connor, and they were forfeited, no one claiming the same. On reëxamination, the witness testified that the sign over the door was Shaw & Connor.

The defendant asked the presiding judge to rule that there was no evidence that the defendant owned or kept the liquor found there on July 3, or that he knew it was there. The presiding judge refused so to rule, but submitted the case to the jury under proper instructions. The jury returned a verdict of guilty, and the defendant alleged exceptions.

THE SECOND COMPLAINT charged the commission of the offence at Ware on September 3, 1873.

At the trial in the Superior Court, on appeal, before *Dewey*, J., William E. Lewis testified for the government as follows : " I know the defendant. He lived in Ware, in a house in the rear of Main Street, a house known as the ' Old Barn.' I went on September 3, 1873, into his place with a search-warrant ; part of his place is used for a tailor's shop. I had a search-warrant ; I went in and found him upstairs ; he came down as I went in. I told him what I had ; he said, ' All right, look around.' As he came down he had a tunnel and measure in his hand. I looked around, and found over the sink in the kitchen several measures, some two or three measures, two tunnels. On that I went down into his cellar. I found in the cellar underneath his kitchen, buried in the ground, three jugs, buried, close by them, another three gallon jug, very nearly full ; the jugs contained gin and whiskey. The way to get into this cellar was from the outside on the west side of the tenement occupied by the defendant as a dwelling-house. This cellar had been in disuse for quite a while , on a former occasion I tried to get in. I did not have any words with the defendant at that time ; afterwards he said it must be some that Webb left when he got through. This was a man who

lived on the premises a year or two before. He said he thought
he could tell me who it was that told me. The path leading into
this cellar was from his back door; it had the appearance of be-
ing used. There were footmarks on the cellar bottom leading
from this outer door leading from these premises. The defend-
ant's cellar is not used in common by any one; not gone over by
any other parties except by himself. I have been to his place
so many times that I know his premises pretty well. Not far
from this time I found strangers there, drunken people there;
have arrested them." On cross-examination he testified: " There
are other tenants in the house; don't know but one other tenant.
I think the house is divided into two tenements; there are only
two front doors; I cannot say whether there are three tenants in
the house or not. There are three cellars under the house; there
is a cellar under the whole house, divided into three parts; there
may be three rooms in the front part, and a long cellar back of
these two or three. There is a door leading out of the middle
front cellar into the back cellar, through the partition. There is
a door at the east end of this long cellar. There are two outside
doors to this long cellar, and one door from the middle room.
The cellars under the front part are used by the tenants. The
northwesterly cellar is the defendant's." Reëxamination: " The
door at the east end has been fastened for a long time. The
door in the cellar is not used, the floor is covered with dust, and
no footmarks leading to this." This was all the evidence intro-
duced by the government.

The defendant contended and asked the court to rule that there
was no evidence that the defendant kept this liquor, or that he
intended to sell the same; but the court declined so to rule, but
submitted the case to the jury with proper instructions. The
jury returned a verdict of guilty, and the defendant alleged ex-
ceptions.

THE THIRD COMPLAINT charged the defendant with the same
offence at Northampton on January 3, 1874.

At the trial in the Superior Court, on appeal, before *Wilkin-
son, J.*, Aaron R. Barton testified for the government as follows:
" I know the defendant. He lives on the road running from
Florence to Lonetown; what is called Rum Row, three quarters
of a mile from the brush shop in Florence. I don't know how

long he has lived there ; some three or four years. I have been to his house several times ; went on the 3d. of January. Elijah N. Sampson was with me. I left Sampson, who hitched his horse. When I got to the house, they locked the doors ; made considerable noise in shutting windows. I called for admittance to the house ; very soon they let me in. Sampson ran around to the rear of the house. As I got in, there were two tumblers and a sugar bowl. Sampson brought around a piece of a jar and a tumbler ; had perhaps half a glass of whiskey. Tumblers had been used. A tumbler and sugar bowl was on the table in this room, a room occupied, I should judge, for a kitchen. There were three rooms on the lower floor, aside from the buttery ; they run along in a row. The kitchen is the first room ; the further room is the bar room, where they kept candies, cigars, tobacco, soda, small beer, small whiskey tumblers. The defendant, his wife, and a person called Jack Purcell were present. One tumbler had been recently used for liquor ; the other had not. The sugar bowl had a spoon in it. Sampson found what was found outside of the house. The doors opened from all the rooms into the others, and were open at this time."

Elijah N. Sampson testified : "I went with Barton on January 3. Barton went to the house ; I stopped to hitch the horse. Heard a noise on the back side of the house, as if something had broken ; there was a crash ; I ran around. There was a stone jar broken, and small quantity of whiskey in the jar. The board was wet, where it had just been wet with this liquor, to all appearances. There was a broken tumbler there. I brought it around into the house. Saw a tumbler setting on the table. On some parts of the board, smelt the liquor very distinctly ; I called it whiskey." This was all the evidence of the government.

The defendant asked the judge to rule that there was not sufficient evidence upon which to convict the defendant. The judge declined so to rule, and submitted the case to the jury under proper instructions. The jury returned a verdict of guilty, and the defendant alleged exceptions.

*D. W. Bond*, for the defendants.

*C. R. Train*, Attorney General, for the Commonwealth, was not called upon.

BY THE COURT. In each of these three cases, the sufficiency of the evidence to be submitted to the jury is so clear that a recapitulation or discussion of it could serve no useful purpose.

*Exceptions overruled.*