## COMMONWEALTH *vs.* PEOPLES EXPRESS COMPANY.
### SAME *vs.* SAME.

Worcester.    November 10, 1908. — May 18, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Constitutional Law*, Interstate commerce. *Express Company. Carrier. Statute,* Construction. *Intoxicating Liquors. Practice, Criminal,* Conduct of trial. *Evidence*, Presumptions and burden of proof. *Words,* " Upon arrival," " Express business," " General," " Regularly."

The transportation of goods may continue to be interstate in the hands of the last carrier, although he does business only in the terminal State and his transportation of the goods consists in taking them from a railroad station to the consignees by means of a horse and wagon.

The definition by the Supreme Court of the United States of words and terms used in a federal statute is binding upon this court.

In U. S. St. 1890, c. 728, providing that intoxicating liquors transported into any State "shall upon arrival in such State . . . be subject to the operation and effect of the laws of such State . . . enacted in the exercise of its police powers, to the same extent and in the same manner as though such . . . liquors had been produced in such State . . . and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise," the words "upon arrival" mean upon delivery to the consignee or to some person or at some place in his behalf, and until such delivery the liquors are not subject to the laws of the terminal State although the final link in the shipment is through a carrier operating wholly within the terminal State.

A statute, which would be unconstitutional as applied to a certain class of cases and is constitutional as applied to another class, may be held to have been intended to apply only to the latter class, if this seems in harmony with the general purpose of the Legislature.

Even though much the larger part of the business of a corporation engaged in the transportation of intoxicating liquors may be interstate commerce, yet if it does engage in local trade, a requirement for a permit, which it would be within the power of the Legislature to make as to transactions wholly within the Commonwealth, would be valid respecting such transactions.

R. L. c. 100, § 49, as amended by St. 1907, c. 517, prohibiting any person or corporation not regularly and lawfully conducting a general express business, other than a railroad or street railway corporation, from receiving for hire or reward spirituous or intoxicating liquor for transportation for delivery in a city or town in which licenses of the first five classes for the sale of such liquors are not granted, is not intended to apply to interstate commerce, and is constitutional.

Since St. 1906, c. 421, prohibiting any person or corporation from transporting for hire or reward spirituous or intoxicating liquors into a city or town where licenses of the first five classes for the sale of such liquors are not granted, without first being granted a permit as provided in the statute, would be unconstitutional if it applied to cases where persons or corporations within the Commonwealth receive such liquors while acting as a link in an interstate shipment, it does not apply to such cases, but only to shipments wholly within the Commonwealth, and is constitutional. RUGG, J., agreeing that the statute is constitutional, but not for the reasons upon which the majority of the court relied, he being of the opinion that it is constitutional because it incidentally, and not primarily and mainly, affects interstate commerce, and therefore is within the police power of the Commonwealth.

At the trial of the P. Express Company for violation of St. 1906, c. 421, in transporting for hire, without having been granted a permit to do so, intoxicating liquors into a town in which licenses of the first five classes for the sale of intoxicating liquors were not granted, there was evidence tending to show that a shipper in another State delivered at one time twenty parcels of intoxicating liquors to a railroad company operating a railroad running to a town in this Commonwealth in which licenses of the first five classes for the sale of intoxicating liquors were not issued, each parcel being addressed to a person in such town "in care of P. Ex. Co." and the railroad company's shipping order stating that the parcels were marked "c/o P. Express Co., consignees," that the railroad company transported the parcels to the town in this Commonwealth, unloaded them and placed them in its freight house there where they were delivered to

the P. Express Company upon its signing a voucher for the entire shipment and paying $2.19, the entire freight charge, and that the P. Express Company then delivered each parcel to the person whose name was upon it and received from such person twenty-five cents. The presiding judge ruled, " There is no question of interstate commerce which comes into this case." *Held*, that such ruling should not have been given, since the jury would have been warranted in finding that there were real purchases from the shipper by the several persons whose names appeared on the various parcels and that the defendant's only connection with the goods was in concluding the interstate transportation in this Commonwealth, which was not subject to the statute.

The words " express business," used in R. L. c. 100, § 49, as amended by St. 1907, c. 517, prohibiting any person or corporation not regularly and lawfully conducting a general express business, other than a railroad or street railway corporation, from receiving for hire or reward spirituous or intoxicating liquor for transportation for delivery in a city or town in which licenses of the first five classes for the sale of such liquors are not granted, include a common carrier who transports packages of merchandise under the personal and immediate charge of himself or his agent over a regular course between certain termini, with a speed or individual care, or both, greater than obtains as to ordinary freight; but they do not include the business of a corporation which merely carries to various persons named thereon as consignees such goods as are brought into a certain town by a railroad company and by it are deposited in its own freight depot, although such corporation is incorporated with power to do an express business and is named an express company.

Where, in his argument to the jury at the trial of a criminal case, the district attorney states that the defendant, a corporation, was in a position to disprove a certain material fact which the evidence of the Commonwealth tended to prove, and that the fact that it failed to do so should be considered by the jury, and the defendant seasonably objects, it is discretionary with the presiding judge whether he shall interrupt the argument or shall let it proceed and in his charge later state to the jury the correct rule of law relating to the facts.

Where, at the trial of a corporation called an express company for violation of R. L. c. 100, § 49, as amended by St. 1907, c. 517, in transporting for hire, without being a person or corporation "regularly and lawfully conducting a general express business," intoxicating liquors for delivery in a town in which licenses of the first five classes for the sale of such liquors are not granted, the Commonwealth has introduced evidence that the defendant transported such liquors, it is proper for the presiding judge to refuse to rule that, in the absence of evidence to the contrary, the presumption was that the defendant did maintain and carry on a general express business, since, although as a matter of law the defendant is presumed to be innocent until its guilt is proved, it is not presumed to be innocent for a particular reason.

A corporation, which was organized with power to do a general express business, and which holds itself out to do such business, is nevertheless guilty of a violation of R. L. c. 100, § 49, as amended by St. 1907, c. 517, prohibiting any person or corporation not regularly and lawfully conducting a general express business, other than a railroad or a street railway corporation, from receiving for hire or reward spirituous or intoxicating liquor for transportation for delivery in a city or town in which licenses of the first five classes for the sale of such liquor are not granted, if it thus transports intoxicating liquors and its carriage of other goods is but casual, infrequent, desultory and incidental, the words " regularly and lawfully conducting a general express business " meaning that

the substantial and major part of its regular daily traffic as an express company must comprehend that variety of goods commonly the subject of transportation by express companies.

TWO COMPLAINTS, received and sworn to in the First District Court of Northern Worcester on October 17, 1907, the first charging a violation of St. 1906, c. 421, in transporting for hire, without having been granted a permit to do so, intoxicating liquors into Gardner, a town in which licenses of the first five classes for the sale of intoxicating liquors were not granted; and the second charging a violation of R. L. c. 100, § 49, as amended by St. 1907, c. 517, in transporting such liquors into Gardner without being a corporation regularly and lawfully conducting a general express business.

On appeal to the Superior Court, the case was tried before *Wait*, J. The facts are stated in the opinion. The shipping order therein referred to was as follows:

" Boston & Maine Railroad.
(See Rules and Conditions on other side.)
" Forwarded the property mentioned below subject to the rules and conditions printed on the back hereof, and which are agreed to be just and reasonable.

|  |  |  |
|---|---|---|
| Bellows Falls, Vt. | Station, August 7th, 1907. | |
| Marks: | Description of Articles. | |
| c/o Peoples Express Co. | 3 half Bbls. Beer. | |
| Consignees. | 10 quarters Beer. | |
|  | 12 cases Beer. | |
|  | Crescent Bottling Co., Shipper. | |
| Jonas Erickson, | 1 c/s Beer. | |
| John Curry, | 1 " " | |
| Carmi Baker, | 1 " " | |
| Peter Dobb, | 1 " " | |
| Mike Bolack, | 1 " " | |
| Frank Rauta, | 1 " " | |
| Stanley Stonis, | 2 " " | |
| Mrs. Jas. Boris, | 2 " " | |
| Anthony Romaniski, | 1 Keg Beer. | |
| Martin Walsh, | 1 " " | |
| D. Covonato, | 3 — ½ bbls. " | |
| John Surprise, | 1 c/s " | |

| Thos. Murray, | | 1 Keg Beer. |
|---|---|---|
| E. H. Meisterling, | 2 | "   " |
| "   "   " | 1 c/s | " |
| Mike Astrof, | 1 — ¼ | " |
| Dan Collins, | 1 c/s | " |
| Thomas Burke, | 1 c/s | " |
| F. Purificat, | 1 — ¼ | " |
| Gustus Lesard, | 1 — ¼ | "   " |

At the close of the evidence introduced by the Commonwealth, the defendant rested, and requested the presiding judge to rule in substance (1) that there was no evidence to warrant the jury in finding the defendant guilty of the offense charged in the complaint; (2) that, if the jury found that the defendant held itself out as willing to receive and carry for proper compensation the usual articles of commerce and to deliver to the persons to whom they were sent such articles of commerce as are usually received and sent by express companies, they should find the defendant not guilty; (3) that, in the absence of evidence that the defendant received or transported for delivery for hire or reward any merchandise or articles of commerce other than intoxicating liquors, the presumption of law was in favor of the defendant, to wit, that the defendant did actually receive and deliver other merchandise and articles of commerce and was ready and willing for hire to transport such merchandise and articles of commerce, and if this presumption was unrebutted the verdict should be not guilty; (4) that, in the absence of evidence to the contrary, the presumption was that the defendant did maintain and carry on the business of transporting all kinds of merchandise and articles of commerce for hire in other places than Gardner; (5) that intoxicating liquors were articles of commerce which carriers engaged in interstate business were bound to carry; (6) that the business of transporting merchandise from one State to another and contracts by a carrier for such transportation were interstate commerce in and of themselves; (7) that, as all the evidence in the case showed that the intoxicating liquors received for transportation in Gardner were shipped from outside this Commonwealth, the business carried on by the defendant was interstate commerce business for the purpose of this complaint; (8) that on all the

evidence the intoxicating liquors testified to in this case were shipped from Bellows Falls, Vermont, or North Walpole, New Hampshire, and were therefore not being transported in violation of law to and into this Commonwealth ; (9) that the provisions of R. L. c. 100, §§ 49, 51, do not attach to any intoxicating liquors shipped from another State to and into this Commonwealth until the transit is ended by the delivery to the consignees thereof; (10) that the intoxicating liquors in this case, while being handled and transported by the defendant company, were in the course of interstate commerce transportation while in transit, and the defendant could not be held under the provisions of the R. L. c. 100, §§ 49, 51.

The presiding judge refused to rule as requested and charged the jury as follows: " There is no question of interstate commerce which comes into this case. I instruct you, and you must take this instruction as a matter of law, that any interstate transit of goods ceased when the goods were delivered in Gardner to the Peoples Express Company. . . . You are to throw out of account in this connection any question of interstate commerce."

The portion of the charge of the presiding judge which related to the argument of the district attorney referred to in the opinion was as follows : " Something has been said here in argument in regard to inferences which you might draw from failure to produce evidence in this case. As I have already stated once, the law is that an accused person need not go on the stand, and that no inference is to be drawn from failure to testify, where a corporation obviously cannot go on the stand. The persons to testify in its behalf then are its officers or agents, and the failure of officers and agents of this corporation to go upon the stand is not to be the basis of any inference as against the corporation. On the other hand, it is the law that if without going upon the stand and without the necessity of any testimony from the defendant himself, who is in possession of testimony which he could give, and he did not give it, and it is material to the case, and it is something the other side could not get, then the jury is justified in drawing such inference from the failure to produce when the defendant ought to produce the testimony. If, after investigation you find there was evidence, apart from

the officers of the company, that is, which could be produced here and which should be for the sake of the evidence, to clear up a particular matter, and you think that it is withheld and that you could not get that, and you think it reasonable and not a violation of the provision I have already referred to in behalf of the accused, then you can draw such inference as you think you ought to draw from the failure to produce such testimony."

The jury found the defendant guilty on both complaints ; and the defendant alleged exceptions.

The cases were submitted on briefs.

*D. I. Walsh & T. L. Walsh*, for the defendant.

*G. S. Taft*, District Attorney, & *E. I. Morgan*, Assistant District Attorney, for the Commonwealth.

RUGG, J. The defendant was convicted upon two complaints, one for the violation of St. 1906, c. 421, and the other for the violation of R. L. c. 100, § 49, as amended by St. 1907, c. 517. St. 1906, c. 421, § 1, provides that " No person or corporation, except a railroad or street railway corporation, shall, for hire or reward, transport spirituous or intoxicating liquors into or in a city or town in which licenses of the first five classes for the sale of intoxicating liquors are not granted, without first being granted a permit so to do as hereinafter provided." R. L. c. 100, § 49, as amended by St. 1907, c. 517, after making several regulations respecting the marking of packages or vessels containing intoxicating liquor for transportation into cities and towns where licenses of the first five classes are not granted, provides further that " No person or corporation not regularly and lawfully conducting a general express business, except a railroad corporation or a street railway corporation authorized to carry freight or express, shall receive such liquors for transportation for hire or reward for delivery in a city or town, in which licenses of the first five classes are not granted, nor transport or deliver such liquors in such cities or towns."

The defendant assails these statutes as invalid under art. 1, § 8, of the Constitution of the United States, which vests control of interstate commerce in Congress. This contention makes necessary a critical examination of the facts, in order to ascertain whether any question of interstate commerce is involved. The evidence tended to show that on August 7, 1907 (transac-

tions on this day being identical in kind with those occurring on several other days in the same month), the Crescent Bottling Company delivered to the Boston and Maine Railroad, at Walpole, in the State of New Hampshire, twenty different packages containing beer. These were plainly and legibly marked, as required by law, and directed to nineteen differently named individuals at Gardner in this Commonwealth. The goods were shipped on bills of lading made out by the Crescent Bottling Company, who were named as consignors. There was a shipping order, which named the Crescent Bottling Company as shipper and under a heading, "Marks:" apparently indicating the marks upon the several packages, appeared this:

> "c/o Peoples Express Co.
> Consignees."

Then followed, one below another, the names of the nineteen persons to whom the packages were directed. One Sullivan, an agent of the Boston and Maine Railroad at Walpole, who had charge of this and other like shipments, testified that the goods were "all consigned in care of the Peoples Express Company, Gardner, Mass.," and that these goods were "consigned by the Crescent Bottling Company to the Peoples Express Company, Gardner, Mass." No separate freight charge was made by the railroad for each package, but a lump sum was charged for all goods shipped in this way on a given day, at a lesser rate for a number of packages in bulk in care of the Peoples Express Company than for the same number of packages as distinct shipments to the individuals named on each package. The railroad agent in New Hampshire also testified "that these packages . . . were put in a section of the car by themselves, and that if there were enough goods of the Peoples Express Company to take an entire car, and if he had no other goods to go to Gardner except the goods of the Peoples Express Company, they were placed in a car by themselves; this car was not devoted to the Peoples Express Company. . . ." On arrival of the car in Gardner the packages were unloaded by employees of the Boston and Maine Railroad, and placed in its freight house, and there delivered to the defendant, which paid the freight, amounting on the twenty packages to $2.19. One voucher was

made in triplicate for the entire shipment, and this was receipted by the defendant at the time of delivery to it.   It kept proper books of record for the intoxicating liquor handled by it (as required by the statute) and receipts for all such liquor delivered to individuals, collecting a charge of twenty-five cents, which, as might have been found from a statement by the treasurer of the defendant, " was money which the express company received in payment for transportation of the packages."   The defendant had not been granted any permit as required by St. 1906, c. 421, nor does it appear that it had ever applied for and been refused such a permit.   Although it was agreed as a fact at the trial that no permits had been granted in the town of Gardner during the period covered by these complaints, nothing more than this bald fact is disclosed on the record.

1. It is necessary first to inquire whether the ruling of the trial judge to the effect that no question of interstate commerce was involved and that interstate transit ceased when the goods were delivered in Gardner to the defendant can be sustained.

The Peoples Express Company was in no sense the interstate carrier.   It did not receive, have custody of or any relation to the goods at the point of shipment.   The liquors were delivered to the Boston and Maine Railroad, which alone was the interstate carrier, and which had the continuous possession of them thereafter, until they were placed in its freight station in Gardner.   No messenger of the defendant accompanied the goods from the point of shipment in New Hampshire to their destination in this Commonwealth.   The defendant was not named as consignee in the shipping order, but was referred to by the phrase, " c/o Peoples Express Co."   The addressing of a package to a consignee in the care of a third person, as between the consignor and consignee and the carrier, and as to the liability of the latter, and in the absence of known limitations upon the scope of the authority given (see *Claflin* v. *Boston & Lowell Railroad*, 7 Allen, 341), confers upon such third person the right to receive the goods, and ordinarily constitutes him the proper person to whom to make delivery.   *Russell* v. *Livingston*, 16 N. Y. 516.   *Chicago & Northwestern Railroad* v. *Merrill*, 48 Ill. 425.   *Ela* v. *American Merchants' Union Express Co.* 29 Wis. 611.   This circumstance may be weighty evidence

as to who is in fact the consignee and as to whether such care taker is the agent of the consignor or of the consignee.

Whether the defendant may have been found to have been connected with the interstate transportation involves an examination of Federal statutes and decisions.    Whatever may be the precise meaning of the words " interstate commerce,"— and their significance is certainly very broad (see *Hopkins* v. *United States,* 171 U. S. 578, 597),— goods brought from one State into another at some time reach a stage where they are no longer immune by reason of the interstate commerce clause from any otherwise legal intrastate regulation.    Respecting intoxicating liquors, that point of time is fixed by the act of Congress of August 8, 1890,* known as the Wilson act, to be " upon arrival " in the State. As the Supreme Court of the United States is the final arbiter as to the meaning of a federal statute, its definition of these words is binding upon this court.    The constitutionality of the Wilson act was established in *In re Rahrer,* 140 U. S. 545.    The meaning of the particular words now in question was first discussed in *Rhodes* v. *Iowa,* 170 U. S. 412, where it was said, " Interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the State to attach to an interstate commerce shipment whilst the merchandise was in transit under such shipment and until its arrival at the point of destination and delivery there to the consignee."    The contention that arrival meant physical presence at the boundary line of the State was held to be unsound.    In *Vance* v. *Vandercook Co. (No. 1)* 170 U. S. 438, the issue was the constitutionality of a statute of South Carolina, which permitted residents of the State to import liquor only after communicating this purpose to the State chemist, and prohibited non-residents from shipping

---

* This statute is U. S. St. 1890, c. 728, and reads as follows : " Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or Territory remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

into the State unless permission was granted. It was said (p. 451) that "the Interstate Commerce clause of the Constitution guarantees the right to ship merchandise from one State into another, and protects it until the termination of the shipment by delivery at the place of consignment, and this right is wholly unaffected by the act of Congress which allows State authority to attach to the original package before sale but only after delivery." *American Express Co.* v. *Iowa*, 196 U. S. 133, *Scott* v. *Donald*, 165 U. S. 58, *Pabst Brewing Co.* v. *Crenshaw*, 198 U. S. 17, and *Foppiano* v. *Speed*, 199 U. S. 501, discuss the Wilson act, but contain no definition of "arrival." *Heyman* v. *Southern Railway*, 203 U. S. 270, held that goods received from another State and placed in the freight warehouse of the carrier, without any act of receipt by the consignee or any unreasonable delay on his part, had not arrived, within the meaning of that act. *Adams Express Co.* v. *Kentucky*, 206 U. S. 129, and two cases immediately following it in the same volume, decided upon its authority, affirmed the right of the citizen of one State to have delivered to him liquor purchased in another. This may mean delivery at his residence, if such is the contract. *Rearick* v. *Pennsylvania*, 203 U. S. 507. *State* v. *Intoxicating Liquors*, 102 Maine, 385. *Loverin & Browne Co.* v. *Travis*, 135 Wis. 322. *Cincinnati, New Orleans & Texas Pacific Railroad* v. *Commonwealth*, 31 Ky. Law Rep. 954. *State* v. *Adams Express Co.* 171 Ind. 138 ; *S. C.* on petition for rehearing, 85 N. E. 966.

The final link in an interstate shipment may be through a carrier wholly within the terminal State. This is plain when a railroad other than the interstate carrier is completing the chain of interstate transportation. It must be true when a real carrier is completing it by horse and wagon.

There is strong ground for the argument that the defendant was not a link in interstate carriage, but was at best the agent for the consignees. Some of the testimony taken literally and some inferences from the acts of the defendant in dealing with the goods tend to show that it was itself the consignee. But the evidence is hardly so conclusive as to render impossible a finding that there were real purchases by the several persons named in the shipping order from the Crescent Bottling Works in New Hampshire, and that the defendant had no other connection with

the goods than to conclude the interstate transportation rendered necessary by the purchase in a foreign jurisdiction. Unless such a finding was in reason impossible, the ruling of the trial judge on this branch of the case cannot be sustained. On the whole it was a question of fact for the jury to determine under appropriate instructions whether the transaction to which the defendant was a party was legitimate interstate commerce; or whether, while clothed in garments of legal appearance, it was in truth and substance a subterfuge designed to circumvent the laws of this Commonwealth as to intoxicating liquors, and the defendant's connection with it as carrier a mere pretense; or whether the defendant was the agent of the several persons, named as consignees, to receipt for the goods in their behalf; or whether in fact it was itself the consignee.

It becomes necessary therefore to consider the terms of the statutes under which the complaints are framed, to determine their scope and to pass upon their constitutionality in respect of federal control over interstate commerce. Their language is general and includes all deliveries having their inception within the Commonwealth. As was said by Knowlton, C. J., in *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, 241: " A statute which would be unconstitutional as applied to a certain class of cases, and is constitutional as applied to another class, may be held to have been intended to apply only to the latter class, if this seems in harmony with the general purpose of the Legislature." There is ample scope for the operation of the statutes in question in respect of trade having its beginning and ending within the limits of this Commonwealth. Even though much the larger part of the business of a given individual may be interstate commerce, yet if he engages in local trade, requirement for a permit is a valid regulation respecting such intrastate transactions. The substance of these statutes has been held heretofore to be within the constitutional power of the Legislature as confined to local commerce. *Commonwealth* v. *Intoxicating Liquors*, 172 Mass. 311. There is no occasion for reviewing this decision or doubting its binding force. Hence these statutes are constitutional so far as they apply to business not interstate in its character. *Osborne* v. *Florida*, 164 U. S. 650. *Kehrer* v. *Stewart*, 197 U. S. 60. *Armour Packing Co.* v. *Lacey*, 200 U. S. 226.

It is plain from inspection of the provisions of R. L. c. 100, § 49, as amended by St. 1907, c. 517, that it was not intended to apply to interstate commerce. The first sentence of the section is a prohibition to consignors or sellers. Such a statute can have no extraterritorial effect. It cannot act upon sellers or consignors outside of Massachusetts. The second sentence is an inhibition on carriers receiving such goods. This too can have no validity except within this Commonwealth. Moreover, if it be assumed to have been intended to relate to interstate commerce, it is apparent that its terms constitute restraint and interference with that which must under the Constitution of the United States be free and unrestricted so far as State laws are concerned. It follows that the scope of this statute according to its terms and the intent of its framers includes only such transportation of intoxicating liquors as lies wholly within this Commonwealth. It may be noticed in this connection that the Congress of the United States has covered this field comprehensively, so far as it relates to interstate commerce, by an act approved March 4, 1909, and entitled " An Act to codify, revise, and amend the penal laws of the United States," in §§ 238, 239 and 240.*

---

* " Sec. 238. Any officer, agent, or employee of any railroad company, express company, or other common carrier, who shall knowingly deliver or cause to be delivered to any person other than the person to whom it has been consigned, unless upon the written order in each instance of the *bona fide* consignee, or to any fictitious person, or to any person under a fictitious name, any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind which has been shipped from one State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, shall be fined not more than five thousand dollars, or imprisoned not more than two years, or both.

" Sec. 239. Any railroad company, express company, or other common carrier, or any other person who, in connection with the transportation of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any

A majority of the court are of opinion that St. 1906, c. 421, if held to include interstate shipments, would be unconstitutional, as being unlawful interference with interstate commerce, and that therefore it was intended to apply only to intrastate shipments.   The Wilson act, as interpreted by the Supreme Court of the United States, insures delivery to the consignee of intoxicating liquor, which is transported as interstate commerce, free from and regardless of all prohibitive statutes of the several States.   As pointed out above, such delivery may be at the residence or place of business of the consignee as well as at some common depot of consignment.   The liquor is safe from State laws, until it passes into the actual or constructive possession of the consignee. - *Rhodes* v. *Iowa*, 170 U. S. 412.   *Vance* v. *Vandercook Co.* (*No. 1*) 170 U. S. 438.   *American Express Co.* v. *Iowa*, 196 U. S. 133.   *Pabst Brewing Co.* v. *Crenshaw*, 198 U. S. 17.   *Foppiano* v. *Speed*, 199 U. S. 501.   *Heyman* v. *Southern Railway*, 203 U. S. 207.   *Adams Express Co.* v. *Kentucky*, 206 U. S. 129.   If the statute was construed as applying to interstate commerce, it would constitute a restriction upon its freedom and therefore would be beyond the power of the State.

This is not my own view.   It seems to me that St. 1906,

State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, shall collect the purchase price or any part thereof, before, on, or after delivery, from the consignee, or from any other person, or shall in any manner act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, saving only in the actual transportation and delivery of the same, shall be fined not more than five thousand dollars.

" Sec. 240.  Whoever shall knowingly ship or cause to be shipped, from one State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, any package of or package containing any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, unless such package be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein, shall be fined not more than five thousand dollars; and such liquor shall be forfeited to the United States, and may be seized and condemned by like proceedings as those provided by law for the seizure and forfeiture of property imported into the United States contrary to law."

c. 421, in § 2, being mandatory and the required fee for the permit nominal, and not being by its terms restricted to commerce wholly within the Commonwealth but comprehensively broad in its language, and the regulation relating only to use of highways within the several municipalities, the control of which is referable to the police power of the several States (*New Orleans Gas Co.* v. *Louisiana Light Co.* 115 U. S. 650, 661, *Fair Haven & Westville Railroad* v. *New Haven,* 203 U. S. 379, 390), it falls within that group of statutes incidentally but not primarily and mainly affecting interstate commerce and hence constitutional as within the police power of the several States. The cases, which lead my mind to this conclusion, are collected in a footnote.* But in this respect I am overborne by the opinion of my associates.

The result is that as there was evidence from which a jury might find that the defendant was engaged in interstate commerce and as such commerce is not subject to the terms of the statutes, there was error in the instructions to the effect that no question of interstate commerce was involved.

---

* *Hennington* v. *Georgia,* 163 U. S. 299. *Missouri, Kansas & Texas Railway* v. *Haber,* 169 U. S. 613. *Western Union Telegraph Co.* v. *New Hope,* 187 U. S. 419. *Atlantic & Pacific Telegraph Co.* v. *Philadelphia,* 190 U. S. 160. *Smith* v. *Alabama,* 124 U. S. 465. *Nashville, Chattanooga & St. Louis Railway* v. *Alabama,* 128 U. S. 96, 101. *New York, New Haven, & Hartford Railroad* v. *New York,* 165 U. S. 628. *Sherlock* v. *Alling,* 93 U. S. 99. *Reid* v. *Colorado,* 187 U. S. 137. *Rasmussen* v. *Idaho,* 181 U. S. 198. *Western Union Telegraph Co.* v. *James,* 162 U. S. 650. *Silz* v. *Hesterberg,* 211 U. S. 31. *Asbell* v. *Kansas,* 209 U. S. 251. *Bacon* v. *Walker,* 204 U. S. 311. *Jones* v. *Brim,* 165 U. S. 180. *Wilson* v. *Eureka City,* 173 U. S. 32. *Pennsylvania Railway* v. *Hughes,* 191 U. S. 477. *Chicago, Milwaukee & St. Paul Railway* v. *Solan,* 169 U. S. 133. *Morgan Steamship Co.* v. *Louisiana,* 118 U. S. 455. *Cooley* v. *Board of Wardens,* 12 How. 299, 320. *Packet Co.* v. *St. Louis,* 100 U. S. 423. *Packet Co.* v. *Keokuk,* 95 U. S. 80. *Martin* v. *Pittsburg & Lake Erie Railroad,* 203 U. S. 284. *Mississippi Railroad* v. *Illinois Central Railroad,* 203 U. S. 335. *Southern Railway* v. *King,* 160 Fed. Rep. 332. *Railroad Co.* v. *Fuller,* 17 Wall. 560. *Louisville & Nashville Railroad* v. *Kentucky,* 161 U. S. 677. *Richmond & Alleghany Railroad* v. *Patterson Tobacco Co.* 169 U. S. 311. *Chicago, Burlington & Quincy Railway* v. *Drainage Commissioners,* 200 U. S. 561. *State* v. *Chicago, Milwaukee & St. Paul Railway,* 136 Wis. 407. *DeLorme* v. *Atlantic Coast Line Railway,* 79 S. C. 370. *Chicago, Rock Island & Pacific Railway* v. *State,* 86 Ark. 472. *Commonwealth* v. *Mulhall,* 162 Mass. 496. See R. L. c. 52, §§ 14, 16, 18, 19, 23, 31.

The defendant's prayers numbered 1, 5, 6, 7, 8, 9 and 10 were rightly refused as being either inaccurate or inapplicable to the evidence.

As the cases must go back for a new trial, we determine such of the other questions raised by these exceptions as are likely to arise in the event of a finding as a fact that the defendant was not engaged in interstate commerce.

2. The defendant argues, as to the complaint under R. L. c. 100, § 49, as amended by St. 1907, c. 517, that there was no evidence adequate to sustain a finding that it was not doing "a general express business," within the meaning of the words as used in said statute. Our statutes do not define what is meant by express business. The language of St. 1907, c. 586, as to the taxation of express companies and of St. 1906, c. 463, Part I. § 7, and of St. 1908, c. 599, as to the authority of the board of railroad commissioners over express companies, and of St. 1906, c. 463, Part II. §§ 13, 189, 197 and 246, read in connection with R. L. c. 70, § 8, c. 106, § 62 (as amended by St. 1906, c. 427), c. 95, § 7, and c. 208, § 26, as amended by St. 1906, c. 261, § 1, shows that the phrase includes persons engaged in express business other than those using railroads and railways. But an express business is something different from a trucking business. It is a term of modern birth, having first been used in its present significance in 1839. *Express Cases*, 117 U. S. 1, 23. *Pfister* v. *Central Pacific Railroad*, 70 Cal. 169, 179. *Sub nomine*, Century Dictionary. The proportion of express business conducted through the instrumentality of railroads, steamboats and railways is so vastly in excess of that carried on in any other way as to lead some courts to assert that "such a thing as an express company dissociated from transportation by rail or steamer is unknown." *Pacific Express Co.* v. *Seibert*, 44 Fed. Rep. 310, 318. But generally the words "express business," and particularly as used in the statute now under consideration, have a more comprehensive meaning and include a common carrier who transports packages of merchandise under the personal and immediate charge of himself or agent over a regular course, between certain termini, with a speed, or individual care, or both, greater, than obtains as to ordinary freight. It may include thus those who carry in their

own vehicles, as well as those who go upon trains and steamers owned by others. But it involves " the idea of regularity, as to route or time, or both." *Retzer* v. *Wood*, 109 U. S. 185. In popular speech as well as matter of law, it may include the transportation wholly upon highway vehicles between contiguous or neighboring localities. See *Brooks* v. *Shaw*, 197 Mass. 376.

Tried by this test, it is obvious that the evidence was ample that the defendant was not conducting a general express business. It is open to grave doubt whether it was doing an express business at all. It may have been found to be acting as truckman, possessing none of the elements which are the essential characteristics of an expressman. It merely carried to various persons named as consignees the goods brought into the town by the Boston and Maine Railroad and deposited by it in its freight depot. See *Retzer* v. *Wood, ubi supra.*

Nor was its business general even as a truckman. On the evidence, it carried almost nothing save intoxicating liquor. It was incorporated with power to do an express business, and went by the name of express company. But to call a truckman an expressman does not make him one. The instructions given by the trial judge upon what constitutes a general express business were sufficiently favorable to the defendant.

3. The district attorney argued to the jury that the defendant was in a position to prove that it was doing a general express business, if it was a fact, and that, having failed to offer such proof, this fact should be considered by the jury. The defendant seasonably objected to the argument, and excepted to the refusal of the presiding judge to interfere. The single sentence excerpted from the argument of the district attorney, standing alone, is open to the objection that it asked for an inference, unfavorable to the defendant, from its failure to call its own officers as witnesses. But the defendant has no valid exception. Although empowered so to do, it is ordinarily discretionary with a trial judge either to direct counsel to cease to pursue an objectionable line of argument or to permit him to proceed, and give adequate instructions in his charge to protect the rights of the parties. Where the argument is wholly foreign to the issues or based upon facts excluded from the con-

sideration of the jury, it is wiser to stop the counsel.   But where it is directed to subjects generally germane to the matters which the jury are to consider, and only incidentally open to objection, and is not prolonged, it may conduce to the orderly and dignified conduct of trials to refuse a request to interfere and to give ample instructions in his charge covering the point. *Sayles* v. *Quinn*, 196 Mass. 492.   The trial judge followed the latter course, and, having declined to stop the argument, gave full instructions in accordance with the well settled principle that where incriminating evidence has been introduced by the Commonwealth and explanations consistent with his innocence could be produced by the defendant through witnesses other than himself, more likely to be known to him than to the representatives of the government, and he does not call such witnesses, his failure in this respect is fair matter for comment, and is not within the protection of the Constitution.   *Commonwealth* v. *Finnerty*, 148 Mass. 162.   *Commonwealth* v. *McCabe*, 163 Mass. 98.   *Commonwealth* v. *Goldstein*, 180 Mass. 374. See *McKim* v. *Foley*, 170 Mass. 426.   The inference drawn by common sense and approved by the law is that such evidence if presented would be unfavorable to the defendant.   *Commonwealth* v. *Webster*, 5 Cush. 295, 316.   The accuracy of the charge as to the precise extent of the defendant's constitutional immunity has not been argued and we do not pass upon it further than to say that it was at least sufficiently favorable to the defendant.   See *Logan* v. *Pennsylvania Railroad*, 132 Penn. St. 403, 408; *Twining* v. *New Jersey*, 211 U. S. 78, 93; *Hammond Packing Co.* v. *Arkansas*, 212 U. S. 322, 348; *King of the Two Sicilies* v. *Willcox*, 7 State Tr. (N. S.) 1049, 1060.

4. The defendant's third and fourth requests for rulings could not have been given, for the reason that they both asserted a presumption that the defendant was carrying on a general express business.   There is no legal presumption of that nature. Simply because one is charged with transporting liquor where he does not carry on a general express business, does not create a presumption that in fact he carries on a general express business.   He is only presumed to be innocent until his guilt is proven, but not innocent for a particular reason.   The instructions given upon this point were adequate.

5. The final contention of the defendant is that its prayer should have been granted to the effect that, if it held itself out as ready to do a general express business, it must be found not guilty.  It is doubtful whether there was any evidence that the defendant held itself out as doing an express business within the definition we have given to those words, or that it was anything more than a deliverer of parcels.  But, assuming that there was evidence to which the prayer was applicable, it was not a correct statement of the law.  The language of the statute, according to its plain intent, shows this.  So far as material, it is, " No person or corporation not regularly and lawfully conducting a general express business."  This describes a fact and not an intent, a physical act, not a state of mind.  The statute is entitled " An Act relative to the registration of carriers of intoxicating liquors," and must be read in the light of its manifest purpose.  No matter how desirous one might be of doing a general express business, nor how widely he might advertise his facilities in this respect, if, nevertheless, (after such reasonable time to enable establishment in business as had elapsed in the present case,) the only trade that came to him was in intoxicating liquors, he could not be said to be really doing a general express business.  The word " general " in the statute imports something more than a casual, infrequent, desultory and incidental carriage of goods other than intoxicating liquors, and means that the substantial and major part of the daily traffic must comprehend that variety of goods commonly the subject of transportation by express companies.  The word " regularly " implies something of fixedness and permanence in the character of the business, although it may also relate to stated times and established routes of conveyance.  In the case supposed, the carrier would be confined by the demands of his patrons to this specialty, no matter how anxiously he might desire to change the character of his business.  Under these circumstances he would in truth and in fact be a " carrier of intoxicating liquors," within the meaning of those words as used in the statute, and not " regularly and lawfully conducting a general express business."  The instructions upon this branch of the case were correct.

*Exceptions sustained.*