## COMMONWEALTH *vs.* MARGARET FINNERTY.

Suffolk.    November 26, 1888. — January 1, 1889.

Present : MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Intoxicating Liquors — Evidence — Failure of Defendant to call Witnesses.*

At the trial of a complaint against a woman for keeping intoxicating liquors with intent unlawfully to sell the same on a day named, it appeared that ale in bottles and empty lager beer bottles were found upon searching a tenement occupied by her and her children; and she testified that she owned the building

containing the tenement, and its yard, and that she let rooms in it to tenants, the yard and the cellar under it being used " by all the tenants in the building." Evidence was admitted, against the defendant's objection, that bottles of lager beer and bottles of ale bearing the same marks as those found in her tenement were found buried in different places in the yard; that another bottle of ale marked like the others, and also a pick and a shovel, were found in the cellar; and that a search of the rooms occupied by her tenants disclosed no intoxicating liquors. *Held*, that this evidence was properly admitted.

A bill of exceptions alleged at the trial recited that the officers who made the search were permitted to testify, against the defendant's objection, that, within three weeks subsequent to the date of the complaint, which was the day after that upon which the liquors were found, " they saw parties going into and coming out of defendant's premises, and they stated the number and occasions," without more. *Held*, that it could not be said that the presiding judge had erred in admitting this evidence, in his discretion.

The judge, in commenting upon the fact alluded to by the district attorney in his argument, that the defendant had not called her children and tenants as witnesses, instructed the jury that if they should find, in view of the evidence of her guilt, that the defendant was called upon to produce other evidence within her reach, and that if she knew that her children and tenants from their relations to her could give important evidence as to her guilt, such that "you would expect her to call them, and not the Commonwealth; if she does not call them or explain why she does not, it is a circumstance in the case for your consideration, giving it such weight and only such weight as you think it fairly entitled to." *Held*, that the instruction was not erroneous.

COMPLAINT to the Municipal Court of the Roxbury District of the city of Boston, dated August 6, 1888, and alleging that the defendant, on August 5, 1888, unlawfully did expose and keep for sale intoxicating liquors with intent unlawfully to sell the same within this Commonwealth.

At the trial in the Superior Court, on appeal, before *Sherman*, J., police officers testified that, upon going, on August 5, 1888, with a search-warrant to premises occupied by the defendant, they found in a small grocery store there kept by her four bottles of ale, marked golden ale, in an ice-chest, and some empty lager beer bottles, and in the kitchen two other bottles of ale, also marked golden ale. The officers were then permitted, against the objection of the defendant, to testify that in the yard connected with the building in which the defendant's premises were located they found buried in different places six bottles of ale, marked golden ale, forty-five bottles of lager beer, and one bottle of champagne cider; that in the cellar in the building there were found one bottle of ale, marked golden ale, and a pick and shovel; that premises occupied by the other tenants in the build-

ing were searched and no intoxicating liquors were found; and that within three weeks after the date of the complaint they saw parties going into and coming out of defendant's premises, and they stated the number and occasions.

The defendant testified, that the bottles found in the cellar and the liquors found in the yard were not hers; that she had no control over them, and did not know who owned them; that three other tenants occupied rooms in the building besides herself; that the cellar and the yard were used by all the tenants in the building; that the beer found in the ice-chest was for her own use; that she had three children above ten years of age living with her, the oldest of whom was ill at the time of the trial; and that she owned the building and the yard, and let the rooms occupied by the other tenants to them.

The district attorney in his argument to the jury commented upon the fact that the defendant had not called her children and her tenants as witnesses.

The judge, in referring to that fact, instructed the jury, against the defendant's objection, as follows:

" If you find that the government produced such evidence of the guilt of the defendant that, in addition to her own evidence, she was called upon to produce other evidence within her reach; that she knew from the hearing in the Municipal Court the evidence which was to be produced against her here, and that her children and tenants were important and material witnesses, and that she knew they could give important and material evidence upon the issue of her guilt; that those witnesses were so situated in their relation to the defendant that you would expect her to call them, and not the Commonwealth; if she does not call them or explain why she does not, it is a circumstance in the case for your consideration, giving it such weight and only such weight as you think it is fairly entitled to."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*H. F. Naphen*, for the defendant.

*A. J. Waterman*, Attorney General, *& H. A. Wyman*, Second Assistant Attorney General, for the Commonwealth.

KNOWLTON, J. The defendant testified that she owned the yard and building referred to in the evidence, that she occupied

a portion of the building, that there were three "other tenants" there, to whom she let the rooms which they occupied, and that the cellar and yard were used "by all the tenants in the. building." There was evidence that empty lager beer bottles, and ale in bottles, were found in her tenement; and, in that connection, testimony was competent that bottles of lager beer and bottles of ale, bearing the same marks as those found in her tenement, were found buried in different places in the yard, and that another bottle of ale marked like the others, and also a pick and a shovel, were found in the cellar. As bearing upon the question whether these bottles belonged to her, the jury might properly consider the evidence that no intoxicating liquor was found in searching the premises occupied by her tenants, while, in the portion of the building occupied exclusively by her, other bottles like these were discovered. *Commonwealth* v. *Pierce*, 107 Mass. 487. *Commonwealth* v. *Shaw*, 116 Mass. 8, 11, 13. *Commonwealth* v. *Gallagher*, 124 Mass. 29. *Commonwealth* v. *McCullow*, 140 Mass. 370.

The testimony as to the persons seen going into and coming out of the defendant's premises may be considered, first, in reference to the kind or quality of the evidence, and secondly, in reference to the time to which it relates. It has often been held, that, if intoxicated persons are seen at a place, or coming from a place, that is evidence upon the question whether intoxicating liquor is kept for sale there. So of people going in and out of a shop at all hours of the day and evening, and carrying in and out jugs and demijohns. *Commonwealth* v. *Taylor*, 14 Gray, 26. *Commonwealth* v. *Maloney*, 16 Gray, 20. *Commonwealth* v. *Kennedy*, 97 Mass. 224. And we cannot say that, even without evidence of intoxication, or of carrying jugs and the like, persons may not be seen going to and from a place in such numbers, at such times, and under such circumstances, as to thereby furnish evidence proper to be considered, in connection with other circumstances, as indicating that intoxicating liquors are sold there. Whether the evidence objected to in this case was of any significance does not appear. The witnesses stated the number of persons, and the occasions. These may have been such as to indicate that the persons were there as frequenters of a drinking place, and not as ordinary visitors of a family, or as

patrons of a grocery store. It is not shown that the evidence was incompetent as to substance.

It was objected to as covering a period three weeks after the day to which the principal evidence related, which was the day before the complaint was made. It is clear that the defendant could not be convicted upon evidence showing merely that she committed an offence after the making of the complaint. Evidence could not properly be introduced for the purpose of showing that, either as a substantive fact, or as furnishing an argument that she was probably guilty of the offence named in the complaint because she had committed another like it. *Commonwealth* v. *Jackson*, 132 Mass. 16. But the illegal keeping of intoxicating liquor with intent to sell it, like keeping a nuisance, is a continuing offence, which may extend over a long or a short period of time. *Commonwealth* v. *Purdy*, 146 Mass. 138. If attention is directed to any point of time during the keeping, there is a probability, from the very fact of keeping then, that the same condition has existed from some previous time, and will continue for some time into the future. And so, as to offences which are in their nature continuing, evidence has often been received of a condition a little before or a little after the time within which the offence must be proved. And this rule has been repeatedly applied to prosecutions for unlawfully keeping intoxicating liquor with intent to sell it. *Commonwealth* v. *Carney*, 108 Mass. 417. *Commonwealth* v. *Stoehr*, 109 Mass. 365. *Commonwealth* v. *Berry*, 109 Mass. 366. *Commonwealth* v. *Dearborn*, 109 Mass. 368. *Commonwealth* v. *Matthews*, 129 Mass. 487. *Commonwealth* v. *Ferry*, 146 Mass. 203. The introduction of this kind of evidence should be carefully guarded, and the testimony should be confined to a time very near the time in question, or should be connected with it by evidence showing a continuance of the same condition through the entire intervening period. But in this respect much must be left to the discretion of the presiding judge. In the case at bar, we cannot say that this discretion was erroneously exercised.

The last exception was to the instruction given to the jury. It is true that, under our Constitution, one charged with a crime cannot " be compelled to accuse or furnish evidence against himself," nor can any inference be drawn against him from his

failure to testify.  But it sometimes happens that the Commonwealth introduces in evidence facts and circumstances which tend strongly to prove a defendant's guilt, and it becomes a question what weight shall be given them in view of conceivable explanations of them consistent with his innocence.  If it is manifest that such explanations, if they were founded on fact, could easily be furnished by the defendant, through witnesses other than himself, his failure to furnish them is itself a circumstance which may always be considered by the jury in weighing the facts and circumstances introduced by the Commonwealth.  Unexplained, the facts and circumstances in the case supposed are cogent.  If it did not appear that the defendant could easily call witnesses other than himself to explain them if he were innocent, possible explanations might be conjectured, which might make his guilt doubtful.  His failure to call such witnesses in such a case is not within the protection of the Constitution, and his conduct in this particular may be considered, just as his conduct before trial may, if he declines to explain circumstances brought to his attention which point strongly to his guilt.  *Commonwealth* v. *Clark*, 14 Gray, 367.  *Commonwealth* v. *Harlow*, 110 Mass. 411.  *Commonwealth* v. *Costley*, 118 Mass. 1, 27.  *Commonwealth* v. *Brownell*, 145 Mass. 319.  This, too, is a principle which should be applied cautiously, and with a strict regard for the rights of persons accused.  The jury should ordinarily be instructed not to draw inferences from the neglect of a defendant to call witnesses, unless it appears to be within his power to call others than himself, and unless the evidence against him is so strong that, if innocent, he would be expected to call them.

Upon the statement of the present case contained in the exceptions, we cannot say that the instruction given was erroneous or misleading.

*Exceptions overruled.*