MAY V. GRADY *vs.* THE COLLINS TRANSPORTATION
COMPANY, INC.
(and a companion case[1]).

Worcester.   September 26, 1960. — December 6, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Evidence,* Failure to produce witness.   *Words,* "Control," "Available."

Discussion of drawing an adverse inference from failure of a party at
a trial to call a witness or to explain the witness's absence.   [504–509]
At the trial of an action for personal injuries sustained in a collision nearly
nine years before the trial between the defendant's truck and an auto-
mobile operated by the plaintiff, where the plaintiff testified that "four
other boys" whom he named "were in the car . . . one of them . . . in
the front seat," that he had discussed with them how the accident hap-
pened and had given their names to his counsel, and that they had
lived in the city where the trial was taking place and, "as far as" he
knew "still" did, but he did not explain why he did not call them as
witnesses and his testimony as to how the accident occurred was un-
corroborated and was opposed by that of three witnesses pointing to
fault on his part as the cause of the accident, and the defendant first
learned of the four boys' names from the plaintiff's testimony, there

---

[1] The companion case is by Walter J. Grady, Junior, against the same
defendant.

was no abuse of discretion on the part of the trial judge in permitting the jury to draw an inference unfavorable to the plaintiff from his failure to call any of the four boys as a witness. [509–510]

Two ACTIONS OF TORT. Writs in the Superior Court dated October 25, 1947.

The actions were tried before *Fairhurst,* J., and verdicts were returned for the defendant.

*Thomas S. Carey,* for the plaintiffs.

*Francis H. George,* for the defendant.

WHITTEMORE, J. The plaintiffs took exceptions to that part of the charge which instructed that inferences might be drawn from the failure of the plaintiffs to call certain witnesses, and to a refusal of an instruction on the subject.

The plaintiff Walter J. Grady, Junior, twenty-six years of age, was injured on November 18, 1946, about midnight, when the automobile which he was operating, owned by his mother, May V. Grady, the other plaintiff, was in collision with the defendant's truck on Route 122 in Northbridge. Walter (hereinafter, the plaintiff) testified that ''four other boys,'' whom he named, ''were in the car . . . one of them . . . in the front seat with . . . [him].'' He saw them at the hospital in Whitinsville that night following the accident and he believed he discussed with them how the accident happened; he had not seen any of the four lately; he had given their names to his counsel; he did not know whether any effort had been made to see any of them lately; ''all . . . four boys lived in Worcester''; ''as far as I know'' they ''still do.'' The trial was held in September, 1955.

The plaintiff's testimony was that the truck was being driven around a curve partly on his side of the road. The defendant's driver testified that he was on his own side of the road; the Grady car came directly at him, and, although he pulled over into the bank beside the road, Grady skinned along and hit the trailer. A police officer testified that after the accident Grady said that he was coming from a dance in Uxbridge and had no idea how fast he was going around the curve; he guessed he was going too fast to make

the curve which he did not know was there as he was not acquainted with the road; when he came around the curve he thought he was going to hit a telephone pole "so he pulled his car back to the left hand side of the road." A second officer corroborated this testimony.

The refused request read: "[N]o inference is to be drawn against the plaintiff for failing to bring in any of the passengers who were riding in the auto operated by the plaintiff, because the defendant has a right to produce them, if he so desires." The judge, in substance, charged that the obligation is on a party to produce witnesses in his control if it is reasonable to expect they would be helpful to him, but if not within his control, they are witnesses available to either side; the evidence showed that the plaintiff has not produced as witnesses guests in his car; he knows who they are; there is no evidence the defendant knows their names, or their availability; the defendant had a right to say to the plaintiff "produce those witnesses," otherwise, on the failure to produce them, the jury may draw any inference they wish which may be unfavorable to the plaintiff; after the accident one or more of the witnesses talked over with the plaintiff how it happened; "those witnesses, it appears, live in Worcester"; their names were turned over to counsel for the plaintiff; the jury have not heard their testimony which "may or may not help you"; there has been no explanation as to why the witnesses have not been brought in, "whether they're sick or can't come to court"; "you are warranted in drawing the inference [that] if these witnesses were here, they wouldn't help the plaintiff . . . simply that you are warranted in drawing that inference, not that you should."

The applicable rule includes the requirement that if an inference against a party is based on the absence of a possible witness it must appear that the witness is in the control of the party and available. *Commonwealth* v. *McCabe,* 163 Mass. 98, 102–103. *Heina* v. *Broadway Fruit Mkt. Inc.* 304 Mass. 608, 611. *Horowitz* v. *Bokron,* 337 Mass. 739, 743–744. "Control" in this connection means only that the

witness is in such relationship with the party that it is likely that his presence could be procured. *Commonwealth* v. *McCabe,* 163 Mass. 98, 102–103. The word "available" is sometimes used with a meaning similar to "control." See earlier Massachusetts cases cited below; *McClanahan* v. *United States,* 230 F. 2d 919, 926 (5th Cir.) (availability is to be determined not from mere physical presence or accessibility for service, but from the relationship or the nature of the expected testimony); McCormick, Evidence, § 249. In recent cases the meaning ascribed to the word is the narrower one of immediate physical availability. See, for example, *Thornton* v. *First Natl. Stores, Inc.* 340 Mass. 222, 226 (that the physician was practising in Dedham at the time is not proof of "actual availability"). There is not, however, an inflexible requirement for every case of proof of such actual availability.

The scope of the rule of availability is indicated in the review of earlier cases in *Commonwealth* v. *Domanski,* 332 Mass. 66, 70–71. "It is settled that 'where incriminating evidence has been introduced by the Commonwealth and explanations consistent with his innocence could be produced by the defendant through witnesses other than himself, more likely to be known to him than to the representatives of the government, and he does not call such witnesses, his failure in this respect is fair matter for comment, and is not within the protection of the Constitution. . . . The inference drawn by common sense and approved by the law is that such evidence if presented would be unfavorable to the defendant.' *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 581. *Commonwealth* v. *Clark,* 14 Gray, 367. *Commonwealth* v. *Harlow,* 110 Mass. 411. *Commonwealth* v. *Finnerty,* 148 Mass. 162, 167. *Commonwealth* v. *McCabe,* 163 Mass. 98, 102. *Commonwealth* v. *Spencer,* 212 Mass. 438, 451. *Commonwealth* v. *O'Rourke,* 311 Mass. 213, 222. But as Knowlton, J., observed in discussing this principle in *Commonwealth* v. *Finnerty, supra,* 'If it did not appear that the defendant could easily call witnesses other than himself to explain . . . [the strong evidence of guilt intro-

duced by the Commonwealth] if he were innocent, possible explanations might be conjectured, which might make his guilt doubtful' (page 167).   Continuing, he observed that the principle of allowing comment on the failure of a defendant to call witnesses was one to be 'applied cautiously, and with a strict regard for the rights of persons accused. The jury should ordinarily be instructed not to draw inferences from the neglect of a defendant to call witnesses, unless it appears to be within his power to call others than himself, and unless the evidence against him is so strong that, if innocent, he would be expected to call them' (page 167).   But the foundation for comment was lacking here. *There was nothing during the course of the trial to suggest that Green had witnesses available who were not brought forward''* (emphasis supplied).

Within the limits of the rule the trial judge may allow the inference to be drawn if the evidence shows the probable availability to the party of the absent witnesses, the circumstances emphatically call for their presence if his testimony is to be believed, and no explanation has been offered of their absence.   *Commonwealth* v. *O'Rourke,* 311 Mass. 213, 222.

In the *O'Rourke* case it was ruled that an inference could be drawn from the failure to call any of many persons whose names appeared on allegedly false nomination papers.   The district attorney had already called five persons who had testified that their names on the paper had not been written by them.   ''So many names . . . were on the papers that if they were genuine it would seem an easy matter to call in a few of the signers. . . .   We cannot say as a matter of law that this omission [to call any of them] was wholly without significance'' (p. 223).   ''It is frequently held that where a witness is equally available to either party no inference can be drawn against either for not calling him. . . .   But there is no hard and fast rule to that effect.   Whether an inference can be drawn from the failure to call witnesses necessarily depends, as with inferences generally, upon the posture of the particular case and the state of the evidence'' (p. 222).

The earlier decisions in criminal cases, a number of which are cited in the *Domanski* case, *supra,* although they must be read in the light of the recent restatements of the rule, retain significance in showing that the probability of availability may be enough where the occasion for calling the witnesses, or explaining their absence, is sufficiently strong. *Commonwealth* v. *McCabe,* 163 Mass. 98, 102–103 (four men were present when the defendant was arrested. The jury might infer that the defendant "would be likely to know their whereabouts, and that if their testimony could help her she would be able to procure their presence"). *Commonwealth* v. *Finnerty,* 148 Mass. 162, 167 (Could the defendant "easily call witnesses other than himself"? Does it appear "to be within his power to call others than himself"?). *Commonwealth* v. *Peoples Exp. Co.* 201 Mass. 564, 581 ("witnesses . . . more likely to be known to him than to the representatives of the government"). *Commonwealth* v. *Sacco,* 255 Mass. 369, 442–443 (friendly relations of witness to defendant; witness had been seen in an automobile outside the court house). *Commonwealth* v. *Ries,* 337 Mass. 565, 585.

In *Commonwealth v. Spencer,* 212 Mass. 438, 451–452, the inference arose on the failure of the defendant to produce his wife who had been in court during at least part of the trial. The witness was unquestionably available, but the court (Hammond, J.) said, "A failure to explain what can be reasonably explained may be taken as evidence that the truth would not help the defendant. The jury are to judge whether the defendant has done what he could to put the evidence before them and what weight should be given to his failure. . . . The defendant always may relieve himself from any unfavorable inference by showing that by reason of the sickness or absence of the desired witness or from any other cause he has been unable to produce him; but he is to be held to reasonable effort to produce the witness, and in the absence of any evidence of such effort the rule applies."

In noncriminal cases also, where the spur to corroboration was deemed strong, the inference has been allowed based on probable availability. *Attorney Gen.* v. *Pelletier,* 240 Mass. 264, 316 (inference warranted from a failure of the respondent to testify or to call any witnesses). See also *Howe* v. *Howe,* 199 Mass. 598, 603 (breach of trust); *Rioux* v. *Cronin,* 222 Mass. 131, 135 (fraudulent conveyance).

The earlier accident cases do not establish a requirement that immediate availability must always be shown. *Fitzpatrick* v. *Boston Elev. Ry.* 223 Mass. 475, 477 (motorman no longer employed. Both sides had used him in earlier trials. He was equally available to both). *Jones* v. *Boston & No. St. Ry.* 211 Mass. 552, 555 (witness employed by another company). *London* v. *Bay State St. Ry.* 231 Mass. 480, 487 (conductor equally available, as both sides had previously used him). *Little* v. *Massachusetts Northeastern St. Ry.* 229 Mass. 244, 247 (reason for defendant calling the motorman who was no longer employed was so strong that the inference was open, though witness was equally available, having been a witness previously and then in the court house). *Cutler* v. *Jordan Marsh Co.* 265 Mass. 245, 247–248 (an attempt by a plaintiff who had put in no case to get to the jury on an inference asserted to arise because the defendant did not go forward and call two witnesses who might have negatived the plaintiff's case).

Some cases rule only that it was not error to refuse to permit comment on the failure to call a witness. *McGeorge* v. *Grand Realty Trust, Inc.* 316 Mass. 373, 377–378. See also *Jones* v. *Spering,* 334 Mass. 458, 461–462.

In the leading case of *McKim* v. *Foley,* 170 Mass. 426, the inference was sustained without a statement that the experts whom the defendant had consulted and had not called were actually available. The rule stated, however, included the requirement that it must appear "that the witnesses could have been produced." Field, C.J., said, "In such matters a good deal must be left to the discretion of the justice presiding at the trial" (p. 428).

In none of the cases which exemplify the requirement of actual availability did the circumstances emphatically call for the presence of the witness at the call of the party or an explanation of the absence. In two of them the absent witness was a physician, well understood to be often unavailable. *Heina* v. *Broadway Fruit Mkt. Inc.* 304 Mass. 608, 611. *Horowitz* v. *Bokron,* 337 Mass. 739, 743–744 (physician). *Thornton* v. *First Natl. Stores, Inc.* 340 Mass. 222, 226 (physician). *Mallard* v. *Waldman,* 340 Mass. 288, 292.

In the present cases, on the other hand, the circumstances strongly supported the adverse inference. The plaintiff's testimony was uncorroborated and was opposed by that of three witnesses, which, if accepted, showed his admitted fault to be the cause of the accident. The names of the plaintiff's companions had been given to his counsel. There was very substantial likelihood that, notwithstanding the nine year interval, one or more of them lived in Worcester or near by. That there were four witnesses equally called for is important. See *Commonwealth* v. *McCabe,* 163 Mass. 98, 102–103, *supra; Commonwealth* v. *O'Rourke,* 311 Mass. 213, 222, *supra; Mumford* v. *Coghlin,* 249 Mass. 184, 191. It was reasonable that the plaintiff sustain the burden of explaining the failure to produce even one of the four. The plaintiff was on notice that a point was being made of their absence. There was no attempt to secure a tactical advantage by suggesting the inference for the first time in argument. The implication is the other way; that is, the letter of the availability rule is sought to be applied to overcome the strong inference of the circumstances. Unlike the circumstances in *Commonwealth* v. *Domanski,* 332 Mass. 66, 71, the suggestion was emphatic that the plaintiff did have "witnesses available who were not brought forward."

Certain factual statements in the charge were not precise. It was not correct to say that the defendant at the trial did not know the witnesses' names. The significant thing, however, was that it appeared that the defendant knew the names of the witnesses only from the testimony of the plaintiff at the trial and hence had not had equal

opportunity to call them. It was not an established fact, but at best only an inference, that the witnesses "live in Worcester," but the categorical statement was not prejudicial, for all the witnesses still lived in Worcester so far as the plaintiff knew, and the inference was equally strong which arose on the failure of the plaintiff either to call any of them or to explain their absence.

We reiterate that even where, as here, the issue lies in the discretion of the judge, caution should be exercised in permitting the adverse inference. In these cases, however, it was plainly reasonable to conclude that a plaintiff who wished to have the jury believe that the truck driver and two policemen in denying his testimony were mistaken, or lying, would either have called his four companions or explained why he did not do so, and it was well within the discretion of the trial judge to let the inference be drawn.

*Exceptions overruled.*