Commonwealth *v.* Smith.

COMMONWEALTH *vs.* FRANCIS J. SMITH.

Middlesex.   January 3, 1961. — March 7, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Malicious Explosion. Evidence,* Consciousness of guilt, Failure to pro-
duce witness. *Practice, Criminal,* Remark by judge; Argument of dis-
trict attorney; Exceptions: saving of exception; Charge to jury.

Certain circumstantial evidence at the trial of an indictment for malicious
explosion, coupled with evidence of false statements by the defendant
and testimony by him which could have been found to be false, war-
ranted a finding beyond a reasonable doubt that he was the person who
caused an explosion damaging a dwelling at an early hour of the morn-
ing.   [182–184]
On the record of a criminal trial, there was no merit in a contention by
the defendant that prejudicial error was shown by reason of a remark
by the judge as to something observed by him, which the defendant
claimed tended to contradict testimony by a witness for the defence.
[184–185]
An exception saved by the defendant at a criminal trial to a remark made
by the prosecutor in his argument to the jury, which the judge by a
definitive ruling allowed to stand, was sufficient without being subse-
quently renewed in connection with the charge.   [185–186]
After counsel for the defendant at a criminal trial had said in his argu-
ment to the jury that if the defendant, who had been a witness, "had a
criminal record . . . [the prosecution] would have introduced it," there
was no impropriety in a statement made by the prosecutor in his argu-
ment that the fact that a criminal record was not introduced did not
mean that the defendant did not have one.   [185–186]
There was no error at a criminal trial in allowing the prosecutor to com-
ment on failure of the defendant to call as a witness a "close friend" of
his who would have been the logical person to corroborate an alibi as-
serted by the defendant.   [186–187]
There was no merit in a contention by the defendant in a criminal case
that there was prejudicial error in certain derogatory comment by the
prosecutor concerning a "close friend" of the defendant, which the de-
fendant asserted must be construed as an improper attack on the de-
fendant's character.   [187–188]
No error appeared in a failure by the judge at a criminal trial to instruct
the jury specifically on a certain defence where the defendant did not
request any instructions concerning it, did not save any exception to
such failure at the close of the charge, and, after the judge had given
additional instructions requested by him, stated that they were "all" he
requested.   [188]

INDICTMENT found and returned on May 23, 1957.

The case was tried in the Superior Court before *Good,* J.

*Benjamin L. Goldenberg, (Joseph Sax* with him,) for the defendant.

*John T. McNaughton, (John J. Droney,* District Attorney, with him,) for the Commonwealth.

SPALDING, J. Under an indictment charging malicious explosion (G. L. c. 266, § 101) the defendant was found guilty. The explosion, which damaged several rooms on the first floor of the dwelling of Everett J. Bixby in Woburn, occurred about 12:45 A.M. on May 13, 1957. The case comes here on a bill of exceptions, which presents for decision the correctness of several rulings of the trial judge.

1. The defendant contends that the judge erred in denying his motion for a directed verdict. More specifically, he argues that the evidence failed as matter of law to establish beyond a reasonable doubt that he was the person who caused the explosion. There was evidence of the following: In the early morning hours of May 13, 1957, two police officers were sitting in a cruiser on the street in front of the Bixby house, about 450 feet away. At about 12:30 or 12:35 A.M. a man appeared on the side of the street nearest the Bixbys', about 210 to 250 feet away. He started to cross the street, and when he was half way across, the cruiser's headlights were turned on. He then ran the rest of the way across the street and disappeared into a large wooded area on the other side. He was hatless and was wearing a light sports jacket and dark pants. Shortly thereafter, the explosion took place in the Bixby house. An eighty inch fuse, which was found below the back piazza of the house, would have taken from four to five minutes to burn. Two officers searched the woods into which the unidentified man disappeared, but they could find no one. At about 2:30 A.M. two officers apprehended the defendant at an outdoor telephone booth about four tenths of a mile from the Bixby house. He was wearing a light sports jacket and dark pants and was hatless. His pants were "wringing wet from ankles to thigh" and his shoes were

"soaking wet." It had not rained for twelve hours, although prior to that it had rained for three days. In answer to questions put by the officers, the defendant told them "that he was a fight manager and . . . was out doing road work." He said that he did not know where he was, but that he had been running from the vicinity of the Stoneham Zoo, about five miles away. Later, in the police station, the defendant accounted for his presence in the woods by stating that he was "helping out the boys" (whatever that may mean).

The defendant at that time lived on Queensberry Street in Boston. At the trial he explained that he had ridden from Boston to Woburn with a friend, Louis Venios, so that Venios could borrow an automobile, and admitted that his statement to the officers that he became wet "as a result of the road work" was false. He testified that his clothes actually became wet earlier in the evening while he was wringing out clothes and when he stepped in puddles outside his apartment.

The scent from the defendant's clothing was given to bloodhounds, but the results were negative. On the end of the fuse that was found at the scene of the explosion was a black alkaline residue, containing potassium nitrates and nitrites and antimony. The black substance was a "powder residue derived from the burning of the fuse." Nitrites were also found on a blackened area burned on the defendant's right shoe and on three separate areas of the defendant's jacket. "[N]itrite is an unusual substance; . . . it is not a common ingredient found in . . . or on shoes and is not an ingredient of clothing." The defendant's jacket was torn and he explained to the officers that this occurred in a machine shop "where he worked a couple of day[s] previous." At the trial the defendant admitted that he did not work in a machine shop.

The defendant argues that the evidence, although it might cast suspicion on him, fell far short of establishing his guilt beyond a reasonable doubt. It is true, as the defendant argues, that the evidence is mainly circumstan-

tial. The principles governing such evidence are so familiar that they need not be restated, and we shall be guided by them. See *Commonwealth* v. *Webster,* 5 Cush. 295, 319; *Commonwealth* v. *Russ,* 232 Mass. 58, 68; *Commonwealth* v. *O'Brien,* 305 Mass. 393, 400–401; *Commonwealth* v. *Shea,* 324 Mass. 710, 713–714. We also have in mind the settled principle that "[w]hen the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *Carter,* 306 Mass. 141, 147. *Commonwealth* v. *O'Brien,* 305 Mass. 393, 399–401, and cases cited.

We are of opinion, nevertheless, that there was a case for the jury. It is significant that the defendant was found only four tenths of a mile from the Bixby house about two hours after the explosion; that he was dressed in the same manner as the person who was observed leaving the area of the Bixby house just before the explosion; that his pants and shoes were wet, although it had not rained for twelve hours; that he gave a highly unconvincing explanation for his presence at the telephone booth at an unusual hour and at a considerable distance from his home; that nitrites (which are uncommon) were found on the fuse and on his clothes and right shoe; and that the nitrites on his shoe were on a burned area.

The defendant in effect admitted on the stand that his explanation ("road work") for his presence in the vicinity of the Bixby house was false. This was some evidence of guilt. *Commonwealth* v. *Alba,* 271 Mass. 333, 338. *Commonwealth* v. *Bonomi,* 335 Mass. 327, 348. His testimony accounting for his wet clothes could have been found to be inconsistent with explanations given on the morning of the explosion and could have been disbelieved. "If it were found that . . . [his] testimony was intentionally false in material particulars, it would be evidence of guilt." *Commonwealth* v. *Sokorelis,* 254 Mass. 454, 457. See *D'Arcangelo* v. *Tartar,* 265 Mass. 350, 352.

It may very well be that any of the foregoing factors alone would be insufficient to sustain the Commonwealth's

case. For example, the light jacket, dark pants, no hat description could apply to many men. The defendant's clothes could have become wet in other ways than by his running through the woods. The nitrites could have been transferred to his clothes and shoe by someone who had handled the fuse or the debris after the explosion, or they could have come from a source entirely unrelated to the explosion. But when all these factors are considered together, coupled with the admissions by conduct[1] (false statements to the officers and testimony which could have been found to be false), the jury warrantably could have found that the person who caused the explosion was the defendant. See *Commonwealth* v. *Oates,* 327 Mass. 497, 498–499; *Commonwealth* v. *Bonomi,* 335 Mass. 327, 355–356. Compare *Commonwealth* v. *Shea,* 324 Mass. 710, 713–714. The defendant's alibi rested on the credibility of witnesses, who could have been disbelieved by a jury, and the defendant concedes that it was not necessary for a motive to be shown. *Commonwealth* v. *Simpson,* 300 Mass. 45, 56. It was thus not error to refuse to direct a verdict for the defendant.

2. The defendant purportedly excepted to a remark of the judge made in the course of the direct examination of one John O'Neil, a Boston police officer who was an alibi witness for the defence. The remark occurred in these circumstances. "Q. (by . . . [counsel for the defendant]) Incidentally, have you ever seen me before? A. No, I haven't. Q. Have I ever talked to you about this case? The judge: Now what do you mean by 'before'? Counsel for the defendant: Before this case. The judge: Well, I don't know now what you mean by 'before.' I only interrupted because I saw you with . . . [counsel for the defendant] and this other man talking outside from my lobby. I couldn't help — Counsel for the defendant: This is correct. I went downstairs — The judge: When

---

[1] We are mindful that an implied admission of this sort standing alone would not make a case for the jury but coupled with other evidence it "may turn the scale." *Credit Serv. Corp.* v. *Barker,* 308 Mass. 476, 481.

did you last see . . . [counsel for the defendant], is what he's asked you. Have you ever seen him before? THE WITNESS: No, sir. Outside the court house on the way — THE JUDGE: That's the first time you ever saw him? THE WITNESS: Yes, sir. COUNSEL FOR THE DEFENDANT: I'm going to take exception to that remark by your Honor with reference to that, and I am going to ask that exception be noted. THE JUDGE: All right.'' The defendant argues that the remark of the judge about having seen the witness talking with counsel for the defence was tantamount to testimony by the judge tending to contradict the testimony of the witness. We assume that a judge may not contribute any testimony in proceedings before him. See Wigmore on Evidence (3d ed.) §§ 1805, 1909. But that question is not presented. After the alleged contradiction by the judge, counsel for the defendant in fact agreed with the judge and did not take any exception until two more questions had been asked and answered. These questions were designed to clarify a question originally asked by the defendant's counsel and were proper. It is by no means clear what counsel was taking exception to when he stated at that point ''I'm going to take exception to that remark.'' If he intended to object to the earlier remark about what the judge saw, he should have done so when it was made. See *Commonwealth* v. *Theberge,* 330 Mass. 520, 527. No prejudicial error has been shown.

3.  There was no error in permitting the prosecutor to argue that the fact that a criminal record was not introduced to impeach the credibility of the defendant did not mean that he did not have one. This remark was in reply to a statement by counsel for the defence, in argument, ''that if the defendant had a criminal record they [the prosecution] would have introduced it.'' The defendant excepted to the prosecutor's statement, but the judge allowed it to stand and did not mention it in his instructions to the jury. Despite arguments to the contrary by the Commonwealth, this exception has been properly saved. Once the decision of the judge had been made, the defend-

ant was not required to renew the exception by asking for instructions for the jury to disregard this statement. The trial judge had made a final ruling that the argument was not improper, and this indicated by clear implication that no corrective instructions would be given. *Doherty* v. *Levine,* 278 Mass. 418, 420. *Heina* v. *Broadway Fruit Mkt. Inc.* 304 Mass. 608, 610–611. *Commonwealth* v. *Domanski,* 332 Mass. 66, 71.

The Commonwealth's justification for the statement is that the subject was first injected into the case by the defence and was prejudicial to the Commonwealth's case. We agree. The argument that if the defendant had a criminal record the Commonwealth would have produced it is misleading in view of the statutory restrictions upon introducing a criminal record to impeach the testimony of a witness. G. L. c. 233, § 21. In the context of this case, the response of the prosecutor cannot fairly be said to be an attempt to evade the statutory restriction. It was rather an attempt to fight fire with fire — to correct the erroneous impression for which the defendant himself was responsible. In such circumstances it was not prejudicial error to allow the prosecutor to respond as he did. See *Salter* v. *Leventhal,* 337 Mass. 679, 697–698; *Commonwealth* v. *Perry,* 254 Mass. 520, 530–531; *People* v. *Reade,* 1 N. Y. 2d 459, 462; Wharton's Criminal Law and Procedure (1957) § 2083, and cases cited.

4. The judge did not err in allowing the prosecution to comment on the failure of the defendant to call Louis Venios as a witness. The defendant's alibi in essence was that he was with Venios in a Boston bar at the time of the explosion, that shortly before 1 A.M. they left the bar and proceeded to Woburn in the defendant's automobile, and that at about 2:20 A.M. Venios, who was driving, left the defendant at the Woburn telephone booth, where he was apprehended. Several witnesses testified that the defendant was in the bar after midnight, but only one witness, apart from the defendant himself, testified that he was in the bar at the time of the explosion. The defendant's account of

his activities after 12:45 A.M. was unsupported. Inasmuch
as Venios was a ''close friend'' of the defendant, he would
have been the logical person to corroborate the defendant's
story.

The evidence shows the probable availability to the de-
fendant of Venios, and the circumstances were such as to
justify comment by the prosecution on the defendant's fail-
ure to call him as a witness, notwithstanding the fact that
the witness was also available to the prosecution. *Grady* v.
*Collins Transp. Co. Inc.* 341 Mass. 502, 506. This subject
has been so fully dealt with recently in the *Grady* case that
further discussion is unnecessary. It is enough to say that
the case at bar falls within the authority of that case.

5. During his objection to the district attorney's com-
ment on the defendant's failure to call Venios, the defend-
ant's counsel stated that Venios ''is just as available . . .
[to the prosecution] as he is to me.'' In resuming his ar-
gument, the district attorney said, ''the government . . .
cannot always select their witnesses. . . . [It] must often
go down — not to those lilies of the valley, but among the
fungus [*sic*] to get witnesses. But we do not have to do it
in this case. I would not call Louis Venios in any case,
particularly when we learn the type of a person he is, with
whom he's associated.'' The defendant objected to this re-
mark and the judge warned the district attorney that he
was ''getting a little bit off the beaten path.'' The de-
fendant then saved his exception and the judge said that he
''intended . . . to straighten things out a bit'' in his
charge. The defendant argues in substance that, since
there was evidence that he and Venios were friends, the
prosecutor's statement can only be construed as an im-
proper attack (without evidential support) on the defend-
ant's character. The statement might well have been left
unsaid. But to construe it as the counsel for the defendant
would have us as an attack on the defendant's character is
hardly justified. We are of opinion, taking into considera-

tion the judge's charge, that there was no prejudicial error.[1]
As has been well said by the New York Court of Appeals in
a recent case, "Errors are almost inevitable in any trial,
improprieties almost unavoidable, but the presence of one
or the other furnishes no automatic signal for reversal and
retrial. On review, the court's inquiry must be directed
toward determining whether the claimed defect influenced
the jury and tainted its verdict. If the record demon-
strates that it did not, then, the defendant is not entitled to
a second trial." *People* v. *Kingston,* 8 N. Y. 2d 384, 387.

6. The defendant contends that the judge erred in fail-
ing to instruct the jury on the defence of alibi. It is true
that the judge did not single this subject out for special
discussion, but no instructions touching it were requested
by the defendant and no exception for failure so to instruct
was taken by the defendant at the close of the charge. In-
deed, the judge had every reason to believe that the defend-
ant was entirely satisfied with the charge, for after giving
certain additional instructions requested by the defend-
ant's counsel he asked, "Is that all that you request?" to
which counsel replied "That's all I've got." The point
now pressed is obviously an afterthought. We are mindful
that in "appropriate instances this court has and will exer-
cise the power to set aside a verdict or finding in order to
prevent a miscarriage of justice when a decisive matter has
not been raised at the trial." *Commonwealth* v. *Conroy,*
333 Mass. 751, 757. But the case at bar is not such a case.
The entire charge is before us and we are satisfied that the
jury received correct and adequate instructions on the rele-
vant issues in the case.

---

[1] The judge in his charge did not deal specifically with this episode but he
instructed the jury as follows: "When the case ends and before you jurors
retire, each attorney has the opportunity to address you and to argue, and it
is expected that the attorneys will argue persuasively. They put their best
foot forward. . . . Often times, in espousing the cause of their client, the
Commonwealth or the defendant — they overstep the bounds, and sometimes
argue upon certain facts which we recognize as not having been present in
our case. Their enthusiasm takes a grip on them. Well, forget it. You pay
attention to what the attorneys say in relation to the facts as they have been
developed here in the case — facts and the reasonable inferences to be drawn
from the facts — no more or less. You understand that. And if one or both
of the attorneys overstep the bounds, neither or both are to be penalized. . . .
Their enthusiasm at the time moves them and perhaps technically violates the
rule. But an argument shall be based solely upon the facts and the reasonable
inferences to be drawn from the facts."

7.    There was no error in the denial of the defendant's motion for a new trial.    Whether the verdict was against the evidence and whether questions of law should be reëxamined were both matters addressed to the discretion of the judge, of which there was no abuse.    *Commonwealth* v. *Bartolini,* 299 Mass. 503, 516.    *Commonwealth* v. *Kavalauskas,* 317 Mass. 453, 460.

*Exceptions overruled.*