## COMMONWEALTH *vs.* CHARLES S. HAPPNIE.

Suffolk.    November 12, 1974.— April 10, 1975.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Evidence,* Failure to produce witness, Tattoo, Police report, Hearsay.
  *Words,* "Availability," "Probable availability," "Control."

Discussion of the concept of availability with respect to drawing an
  adverse inference from failure of a party at a trial to call a witness
  or to explain the witness's absence. [196-197]
At the trial of an indictment charging armed robbery, where the only
  grievously damaging testimony against the defendant could have
  been contradicted by his wife, an inference adverse to the defendant
  could be drawn from his failure to call his wife as a witness or to
  offer some explanation for her absence. [194-198]
At the trial of an indictment for armed robbery there was no error in
  the judge's refusal to permit the defendant to exhibit to the jury a
  tattoo on his right hand, not mentioned in any description given by
  witnesses to the robbery, where the defendant had refused to testify
  at the trial and there had been no showing that the defendant had
  had the tattoo at the time of the crime. [198-199]
At the trial of an indictment for armed robbery, a police journal report
  containing a description of one of the robbers, apparently a com-
  posite of descriptions given by various eyewitnesses to the robbery,
  was not admissible to impeach the credibility of a witness identify-
  ing the defendant as that robber and giving a description varying
  from that in the police report. [199-200]

INDICTMENT found and returned in the Superior Court on
February 16, 1973.

The case was tried before *McLaughlin,* C.J.

*Margaret D. McGaughey (John Murphy* with her) for
the defendant.

*Roger A. Emanuelson,* Assistant District Attorney, for
the Commonwealth.                                            .

ARMSTRONG, J.    The defendant was convicted of armed
robbery[1] in a jury trial made subject to G. L. c. 278,

---

[1] The robbery took place on January 3, 1973, at 9:30 A.M. It netted
$12,400 from the Hyde Park branch of The First National Bank of

§§ 33A-33G. His assignments of error which have been briefed present for our consideration three unrelated contentions which we discuss separately.

1. The Commonwealth produced a witness, Mrs. Schacht, who testified that the night before the robbery the defendant and his wife had stayed at her (Mrs. Schacht's) house and that the defendant had told them his plans for a robbery and had displayed items of apparel to be used in the robbery, including a baseball cap similar to one said by eyewitnesses to have been worn by one of the robbers. Mrs. Schacht further testified that the defendant had returned to her house on the day of the robbery about a half hour after it had occurred, displaying large numbers of notes of small denominations, totaling, he had said, more than $4,000, and had recounted details of the robbery. The next evening the defendant again visited Mrs. Schacht's house and, in the presence of both Mrs. Schacht and the defendant's wife, again discussed the robbery. The defendant did not testify; there was no evidence introduced (nor was any representation made to the judge) concerning the physical whereabouts of the defendant's wife. The prosecutor commented in his closing argument on the failure of the defendant to call his wife as a witness to rebut the testimony of Mrs. Schacht. The judge refused to declare a mistrial but forthwith instructed the jury in effect that if the jury were to find that the defendant's wife was available to be called but was not called, they would be warranted on the evidence before them in drawing an inference

Boston. There were two robbers, one masked, who went behind the teller's counter and took the cash, and one (the defendant, on the Commonwealth's theory of the case) unmasked and armed with a shotgun, who disarmed the bank guard and directed him, some other bank employees, and customers to lie face down on the floor. The evidence against the defendant consisted partly of in-court and out-of-court identifications of him by the bank manager and by one of the customers, but this testimony was countered to some extent by the inability of the bank guard to say whether the defendant was the unmasked robber and by the testimony of the bank's window washer denying that the defendant was the unmasked robber. The most damaging testimony against the defendant appears to have been that of a Mrs. Schacht, the gist of which is set out in the opinion.

that her testimony, if produced, would not be favorable to the defendant. The defendant argues that there was no showing that his wife was physically available to testify, and points to a statement in the recent case of *Commonwealth* v. *Franklin,* 366 Mass. 284, 293 (1974), "Basic to the inference is the existence of evidence of physical availability of the witness, and the likelihood that he can be produced by summons or otherwise".[2]

"It is settled that 'where incriminating evidence has been introduced by the Commonwealth and explanations consistent with his innocence could be produced by the defendant through witnesses other than himself, more likely to be known to him than to the representatives of the government, and he does not call such witnesses, his failure in this respect is fair matter for comment, and is not within the protection of the Constitution. . . . The inference drawn by common sense and approved by the law is that such evidence if presented would be unfavorable to the defendant.' *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 581 [1909]." *Commonwealth* v. *Domanski,* 332 Mass. 66, 70 (1954). *Commonwealth* v. *Finnerty,* 148 Mass. 162, 167 (1889). *Commonwealth* v. *Ries,* 337 Mass. 565, 585 (1958). *Grady* v. *Collins Transp. Co. Inc.* 341 Mass. 502, 505 (1960). *Commonwealth* v. *Franklin,* 366 Mass. 284, 292 (1974). This is the general rule to which the constitutional prohibition against the drawing of an adverse inference from the defendant's failure to testify (see *Griffin* v. *California,* 380 U. S. 609 [1965]) is an exception. "Whether an inference can be drawn from the failure to call witnesses necessarily depends, as with inferences generally, upon the posture of the particular case and the state of the evidence." *Commonwealth* v. *Franklin, supra,* at 292-293, quoting *Commonwealth* v. *O'Rourke,* 311 Mass. 213, 222 (1942). Apart from the question of the absent witness' availability, this was a particularly appropriate case in which to allow

---

[2] The quoted sentence must be read in the light of the next sentence in the *Franklin* case: "Additionally, the judge may consider whether the defendant has superior knowledge of the identity of the witness and his whereabouts". 366 Mass. at 293.

an adverse inference to be drawn against the defendant. The identification evidence against the defendant was at best conflicting; the most damaging evidence against him was the testimony of Mrs. Schacht. Her testimony against him was so strong that, if innocent, he would have been expected to call his wife to contradict Mrs. Schacht's testimony. *Commonwealth* v. *Finnerty, supra,* at 167. *Grady* v. *Collins Transp. Co. Inc., supra,* at 506, 509. *Commonwealth* v. *Franklin, supra,* at 294. The inference was clearly justified, unless the "availability" of the defendant's wife cannot be said to have been established.

Although the *Franklin* case speaks in terms of the physical availability of the witness as being basic to the inference, that statement must be read in the light of the extensive discussion of the concept of availability in *Grady* v. *Collins Transp. Co. Inc.* 341 Mass. 502 (1960), which was clearly not intended to be overruled by the *Franklin* case and which, to the contrary, is cited as an authority in the *Franklin* case.[3]

The Supreme Judicial Court, in the *Grady* case, *supra,* at 504-505, 506, stated: "The applicable rule includes the requirement that if an inference against a party is based on the absence of a possible witness it must appear that the witness is in the control of the party and available. *Commonwealth* v. *McCabe,* 163 Mass. 98, 102-103 [1895]. *Heina* v. *Broadway Fruit Mkt. Inc.* 304 Mass. 608, 611 [1939]. *Horowitz* v. *Bokron,* 337 Mass. 739, 743-744 [1958]. 'Control' in this connection means only that the witness is in such relationship with the party that it is likely that his presence could be procured. *Commonwealth* v. *McCabe,* 163 Mass. 98, 102-103 [1895]. The word 'available' is sometimes used with a meaning similar to 'control'. See . . . *McClanahan* v. *United States,* 230 F. 2d 919, 926 (5th Cir. [1956]) (availability is to be determined not from mere physical presence or accessibility for service, but from the

---

[3] See, in particular, the *Franklin* case at 293, where the court states: "It would be redundant to restate the many points we have already expounded in the prior cases cited above [one being the *Grady* case]. We reaffirm those principles."

relationship or the nature of the expected testimony); Mc-Cormick, Evidence, § 249. In recent cases the meaning ascribed to the word is the narrower one of immediate physical availability. See, for example, *Thornton* v. *First Natl. Stores, Inc.* 340 Mass. 222, 226 [1960] (that the physician was practising in Dedham at the time is not proof of 'actual availability'). There is not, however, an inflexible requirement for every case of proof of such actual availability . . .. Within the limits of the rule the trial judge may allow the inference to be drawn if the evidence shows the probable availability to the party of the absent witnesses, the circumstances emphatically call for their presence if his testimony is to be believed, and no explanation has been offered of their absence."

The terms "availability," or "probable availability," or "control" (which, as the *Franklin* case, *supra*, at 293, points out, is often used to express the same thought) are words of art. They refer not to proof of actual physical whereabouts, but rather to the likelihood that the party against whom the inference is to be drawn would be able to procure the missing witness' physical presence in court. *Commonwealth* v. *McCabe*, 163 Mass. 98, 102 (1895). This is the sense in which the *Franklin* case uses the expression "physical availability". It is synonymous with the expression "probable availability" used in *Grady* v. *Collins Transp. Co. Inc.* 341 Mass. 502, 506 (1960), and *Commonwealth* v. *Smith*, 342 Mass. 180, 187 (1961). This is made clear from the statement in the *Franklin* case, immediately following the reference to "physical availability": "Additionally, the judge may consider whether the defendant has superior knowledge of the identity of the witness and his whereabouts". 366 Mass. at 293.

Whether the inference is warranted depends in the last analysis on common sense. The jury were entitled to draw the common sense inference that, in a situation where the only grievously damaging testimony against the defendant could be contradicted by the defendant's wife, the defendant's relationship to his wife was such that he would be likely to know her whereabouts, and that if her testimony

could help him, he would be able to procure her presence in court. *Commonwealth* v. *McCabe, supra,* at 102. We conclude that the prosecutor's comment was not improper and that there was no error in the judge's instruction to the jury that they might draw an inference adverse to the defendant from his failure to produce his wife as a witness or to offer some explanation for her absence.[4]

2. None of the eye-witnesses who testified to the description of the unmasked participant mentioned anything unusual about his hands.[5] Just before counsel for the defendant rested, he requested that the judge permit the defendant to exhibit to the jury a tattoo on his right hand. The judge refused on the grounds that the defendant was unwilling to take the stand to give oral testimony subject to cross-examination and that there was no showing that the defendant had the tattoo at the time of the crime. The judge's ruling was correct for the reasons he stated. If the evidence offered should be considered purely physical or demonstrative, rather than testimonial, in nature (see *Schmerber* v. *California,* 384 U. S. 757 [1966]), it was properly rejected as irrelevant, as no foundation had been laid through, for example, testimony that the tattoo was on the defendant's hand at the time of the robbery eleven months before the trial. *Brown* v. *United States,* 356 F. 2d 230, 233-234 (10th Cir. 1966). If we should take the view that the hand could supply its own foundation and constitute evidence of the condition of the hand at the time of the robbery, then the

---

[4] We reject what may be a further contention by the defendant that, because his counsel did not know until Mrs. Schacht testified that it would be necessary to call the defendant's wife, and Mrs. Schacht was a late witness for the Commonwealth, he had no opportunity to call the wife. Mrs. Schacht's testimony referring to the presence of the wife went into evidence on the morning of November 12, 1973. The testimony for the defense ended on the morning of November 14. The judge was not asked for any extension of time for the purpose of procuring the wife's presence.

[5] The customer said nothing of the hands of the unmasked robber; the bank guard testified that the man who disarmed him did not wear gloves; and the bank manager and the window washer testified that the unmasked man wore no gloves.

display of the hand would clearly have had a testimonial component and constituted an election by the defendant to testify. One who so elects is "liable to cross-examination on all matters relevant to the crime with which he is charged, and he may be impeached or discredited like other witnesses." *Commonwealth* v. *West,* 357 Mass. 245, 249 (1970). Because the defendant was unwilling to subject himself to cross-examination, the offer was properly refused. The same result was reached in *People* v. *Wong,* 35 Cal. App. 3d 812, 835 (1973), which presented the same problem.

3. For the purpose of impeaching the credibility of the bank manager, who identified the defendant at trial as the unmasked participant, the defendant attempted to introduce in evidence a police journal report of the robbery which contained a description of the unmasked robber varying from that given by the bank manager.[6]

The journal entry was not admissible as evidence of a prior inconsistent statement of the bank manager; the entry was not shown to have reflected a statement by him at all. It was not admissible as an entry made in the regular course of business (G. L. c. 233, § 78) or as an official written statement, if for no other reason than that it was multiple-level (or "totem-pole") hearsay. *Kelly* v. *O'Neil,* 1 Mass. App. Ct. 313, 316-317 (1973). It was not a public record. *Town Crier, Inc.* v. *Chief of Police of Weston,* 361 Mass. 682 (1972). It was not admissible for the purpose of showing the state of police knowledge; unlike *Commonwealth* v. *Miller,* 361 Mass. 644, 658-659 (1972), an entrapment case cited by the defendant, the state of police knowledge was not relevant. In addition we note that "[a]n exception to the exclusion of evidence cannot be sustained

---

[6] At the trial, the manager described the participant as "somewhere near five foot ten, somewhat husky or stocky perhaps. He had on a dark jacket and cap." The description which was recorded in the police journal stated in pertinent part: "W.M., 5'8", 190 lbs. having a fat face and wore a blue baseball cap, gray work uniform, blue sweater...." This description appears to have been a composite of descriptions given to one Officer Mullane by various eyewitnesses. The journal report was entered by one Officer Deltorto from an investigation report by Officer Mullane.

by showing that the evidence was admissible upon a ground neither obvious nor actually taken." *Rothwell* v. *First Natl. Bank,* 286 Mass. 417, 422 (1934). See *H. H. Hawkins & Sons Co.* v. *Robie,* 338 Mass. 61, 66 (1958). There was no error in the judge's exclusion of the police journal.

*Judgment affirmed.*