COMMONWEALTH *vs.* ROBERT ANDREWS. July 1, 1981. Robert Andrews was convicted on charges (a) of possession of a class D substance, marihuana, and (b) of possession of a class B substance, cocaine, each with intent to distribute the substance. A required finding of not guilty was entered for Andrews on a charge of unlawful possession of a firearm. Andrews has appealed.

Police officers, on September 21, 1979, pursuant to a warrant, made a search of premises at 84 Main Street, Plympton. The defendant was observed at the top of stairs leading to the second floor of the house. He was wearing a T-shirt and dungarees but no shoes. No drugs were found on him, but significant quantities of drugs and related equipment were found in a second floor room which he had occupied at times in the summer of 1979. There was testimony that his room had also been used that summer after September 7, by one Pina, and that Andrews had moved to the house of a girlfriend.

1. An undercover agent for the Plymouth police department went on August 15, 1979, to the 84 Main Street premises with another person. The defendant approached them in the driveway and said "Make it quick, I have . . . to pick up a load." Prior to receiving this conversation in evidence, there was objection in behalf of Andrews out of the hearing of the jury. The prosecution on that occasion justified receiving the state-

ment in evidence as an admission related to "prior acts of" Andrews "because of the large amount of drugs . . . found in the house in September." Before the jury the prosecution gave no explanation of the meaning of the conversation. The defendant was engaged in the construction business and, on cross-examination, the undercover agent himself conceded that he did not "know whether . . . [Andrews] was going to pick up a load of gravel or sand or anything." No motion to strike the statement was made. The statement was not mentioned in the judge's charge or in the prosecution's argument, but only by Andrews's counsel in his argument. The statement perhaps might have been struck from the record (in view of the prosecution's failure to link it with any drug activity) if there had been a motion that it be done. In any event, the statement was sufficiently ambiguous as applied to a person in the construction business as to have had no significance standing alone.

2. There was substantial testimony about the second floor plan of the Main Street house where Andrews was seen during the search on September 21, 1979. A witness testified about having seen him coming from a bedroom where significant quantities of drugs were discovered. Defense counsel requested a view probably in an effort to show that, by reason of a wall, Andrews could not have been seen coming from the direction indicated by some of the testimony. Photographs and a sketch plan of the floor were received in evidence. The trial judge reasonably could have decided that a view was not crucial to the jury's understanding. Whether to take a view was within his discretion. *Commonwealth* v. *Curry,* 368 Mass. 195, 198 (1975). *Commonwealth* v. *Cresta,* 3 Mass. App. Ct. 560, 562 (1975). See G. L. c. 234, § 35.

3. The trial judge correctly refused to allow a required finding of not guilty on the drug charges. A substantial quantity of drugs had been found on September 21, 1979, on the premises at which the defendant (in a T-shirt, dungarees, and without shoes) was present at the time of their seizure. This took place in a house of which his father was either owner or an occupant, and partly in a room which the defendant had occupied at various times during the summer of 1979, and where a bank book of his and a bill of sale of his automobile had been found by the police on September 21. He had been seen at the Main Street house on various occasions during the summer. There was testimony warranting the conclusion that Andrews regarded the house as his residence. On the evidence, viewed in its aspects most favorable to the Commonwealth, together with reasonable inferences to be drawn from that evidence, a rational trier of the fact could properly conclude, beyond a reasonable doubt, that Andrews had knowledge and at least constructive possession of the drugs. See *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. 606, 613-614 (1976), and cases cited.

4. Pina, according to some testimony, had occupied, at times in the late summer of 1979, the room where a part of the drugs were found. A

suit of his was introduced as an exhibit as having been discovered in that room. He was not called as a witness. He was known to Andrews and his friends and family and had been on a hunting trip in Vermont with two of them. He had lived in a trailer on the Main Street premises for several months in the early summer of 1979. The trial judge (after discussing the matter with counsel prior to the closing arguments; see *Commonwealth* v. *Franklin*, 366 Mass. 284, 294-295 [1974]) included in his charge a statement that the jury might draw an inference, but "with considerable caution," that if a witness (here Pina) had been present, his testimony would have been unfavorable to Andrews. The judge quoted verbatim from *Commonwealth* v. *Happnie*, 3 Mass. App. Ct. 193, 195 (1975), and instructed that such an inference only could be drawn "if it's clear that the party [here Andrews] could have called such witness and produced . . . [him] in court and failed to do so." See cases dealing with failure to call a witness collected in Leach & Liacos, Massachusetts Evidence 199-200 (1967). See also *Commonwealth* v. *Niziolek*, 380 Mass. 513, 517-522 (1980). There was testimony that Pina's automobile bore California license plates and that he had not been seen near the Main Street premises after the drug raid of September 21. Andrews's counsel was allowed to argue to the jury considerations concerning Pina's possible unavailability. There was testimony that the undercover agent did not know Pina and one officer testified he had heard the name Pina but did not know whether he had been living at the Main Street house. The evidence permitted a conclusion that Andrews and his family were in a better position than the Commonwealth to know about Pina and to find him if they wanted to do so. The judge, in his careful charge, did not abuse his discretion in permitting the jury to draw an inference adverse to Andrews from Pina's nonappearance, *if* they found "that the witness was capable of production in the courtroom by the defendant."

*Judgments affirmed.*

*Michael F. Natola* for the defendant.

*Robert M. Payton*, Assistant District Attorney, for the Commonwealth.